Butler vs. Slocomb.

No. 7903.

PIERCE BUTLER vs. MRS. CORA A. SLOCOMB.

A mortgage is not negotiable like the note it is intended to secure, but, on the contrary, passes into the hands of the transferree subject to all the equities and defenses which existed between the original mortgageor and mortgagee.

The Defendant in this case is the accommodation endorser of the note of a married woman, authorized by her husband. The holder did not have it presented and protested at maturity. Plaintiff charges that Defendant is liable both as surety and as endorser, and in the latter capacity though the note was not presented and protested. Defendant pleads she is not a surety and has been discharged as endorser for want of demand and protest. *Held* that, under the circumstances of the case, Defendant is liable as endorser, although the note was not demanded and protested. Full exposition of the law governing the case; like this, of the endorsement of a note for which the maker is primarily not liable.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers,* J.

*Leovy & Kruttschnitt* for Plaintiff and Appellee.

First—Plaintiff knew' nothing of the financial relations existing between the parties to the note sued on at the time that he acquired said note.

Had he known said relations, such knowledge would not injuriously affect his case.

Second—If defendant be an endorser, as she claims, then plaintiff not only had the right, but was bound to consider that Urquhart acquired the note, not from his wife, but from defendant.

Third—If defendant is to be considered as an endorser *quoad* plaintiff, then she is still bound, notwithstanding want of protest and notice, as warrantor of the validity of the maker's obligation on the note.

Fourth—Under the facts of this case, defendant is no more an endorser for the accommodation of the maker, than the maker is a maker for the accommodation of the endorser. Both maker and endorser obligated themselves to accommodate a stranger to the paper; both participated in the original consideration of the note; and both are makers.

Fifth—Article 2398 of the Civil Code is not a prohibitory law established in the interests of public police or of good morals, but of certain particular persons. It is a prohibitory law established merely in the interests of married women, and is of the same nature as all other laws established for their protection.

*Kennard, Howe & Prentiss* for Defendant and Appellant:

First—The decision is admitted to be correct in refusing to enforce the mortgage, and in treating Mrs. Slocomb as an indorser.

Second—The error complained of is in holding her as an indorser when it is conceded that no demand was made of the maker at maturity, nor any notice of dishonor given to the defendant.

Third—The obligation of an indorser in Louisiana is conditional, and the condition is suspensive. When read in full it is this: "If this note be duly presented at maturity, and due demand made and payment refused, and if I be duly notified of the dishonor, then, and then only, will I pay the amount." In no other way, as a rule, can the suspensive condition be accomplished and the obligation converted into one that is simple or absolute.

Fourth—Such a suspensive condition is legal and possible, and must, therefore, be performed strictly, and *in forma specifica*. As to the third holder, it is protestative, and if he does not choose to accomplish it, the loss must fall on him. *Volenti non fit injuria.* Larombière on Ob. vol. 2, pp. 91, 92.

**Fifth**—The maxim *lex cogit neminem ad vana* should not be applied to solve the question presented in this case. It is never applied in favor of one party to nullify a lawful and possible condition agreed upon with another. Such a condition is the law which the parties have made for themselves, and cannot be repealed by a consideration of the comparative utility of its performance. Larombière, vol. 2, p. 92.

**Sixth**—But if that maxim can be applied in any case, it does not apply to this. Mrs. Slocomb had a recourse against David Urquhart which she might have enforced if she had received timely notice. Authorities cited.

**Seventh**—The obligation of an indorser is established under the suspensive conditional form at the moment of indorsement and delivery. Duranton, vol. 11, No. 52. Any change made thereafter by a statute has been held to impair the obligation of a contract. 27 Grattan, 230.

**Eighth**—*A fortiori*, could not the plaintiff, as third holder, by his act in loaning money to a third person, his pledgor, change or increase that suspensive, conditional obligation. He might cause it to be accomplished by demand and notice, but he could not by any other act of his convert it into an absolute obligation.

**Ninth**—When the defendant, then, indorsed the note, it was, as to the maker, perfectly valid. The maker had made a contract with the authority of her husband. It was not a case of incapacity. But for the act of plaintiff himself—a subsequent act of which the defendant is conceded to have had no knowledge—it would have remained valid. If the plaintiff had seen that the money was applied to the maker's benefit, it would have continued to be valid.

**Tenth**—The authorities cited from England and the common-law States are not applicable here. At common law, the note of a married woman is an absolute nullity at the time she signs it, and ever thereafter. The endorser is held as a person who has indorsed a forged note.

**Eleventh**—But if we are to adopt the English rule, let us adopt it *in toto*. If adopted *in toto* the note as to Mrs. Urquhart was absolutely void, but as her husband authorized it and procured the defendant's indorsement for his benefit, he was liable on it. The wife's act was his, and Mrs. Slocomb had recourse against him as much as if he had signed the note. Authorities cited, and dilemma stated. Mrs. Slocomb was plainly entitled to notice, then, that she might enforce her recourse against David Urquhart.

**Twelfth**—Another case of same plaintiff against same defendant, involving the same and another question, is coming up as No. 7973 of the docket. This case might be reargued with that, or that with this. Both judgments are secured on appeal, and no harm can result to plaintiff by permitting an oral argument of the above points.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff seeks to hold the defendant responsible personally, and to subject her estate, with mortgage, to the payment of the "*mortgage note*" sued upon. It is chiefly claimed that the defendant is liable as surety and as indorser, though the note was not protested, and that her estate is burdened with a mortgage given to secure the payment of the note, and which encumbered it when she acquired it. The defense is, that the defendant is liable, neither as a surety nor as an indorser, nor otherwise, and that the mortgage claimed never had any and has no legal existence. The facts of the case are not disputed. Questions of law strictly alone are presented. There was judgment in favor of the plaintiff, and the defendant has appealed.

We take the facts as substantially represented by the defendant's counsel.

Mrs. C. A. Urquhart, wife of David Urquhart, appeared before a notary and executed an act of mortgage, in which she acknowledged being indebted to her mother, Mrs. Slocomb, the defendant herein, in the sum of $20,000, to represent which amount she executed and indorsed four promissory notes for $5000 each, which were drawn to the order of and were indorsed in blank by herself. The act was executed, the notes drawn and indorsed by Mrs. Urquhart with the authorization of her husband. Mrs. Slocomb signed the act, but no consideration passed. To secure payment of those notes, Mrs. Urquhart mortgaged a piece of real estate in this city, her separate property. After the act was completed and the notes signed and indorsed by Mrs. Urquhart, Mr. Urquhart obtained on them, for his accommodation, the blank indorsement of Mrs. Slocomb, which was placed *under* Mrs. Urquhart's signature.

Afterwards, Mr. Urquhart, being desirous to raise money for his own account, offered, as collateral security, for his own obligation, the notes so made, signed and indorsed. Plaintiff accepted the offer, received the collaterals, and loaned the money. Mrs. Slocomb was not present at the time, nor had she any communication with plaintiff, nor did she know that he held the notes of Mrs. Urquhart, indorsed by her. When the note sued on fell due, plaintiff did not demand payment of it, nor did he have it protested, or give any notice to Mrs. Slocomb of its non-payment by the maker. In April, 1879, Mrs. Urquhart sold and transferred to Mrs. Slocomb the property described in the mortgage act, but Mrs. Slocomb did not assume payment of the notes apparently secured by mortgage on it, nor did those notes form part of the purchase price. Some two years after the maturity and non-payment of the note, plaintiff demanded payment of Mrs. Slocomb. On her refusal he brought this suit, for the purpose of making her personally liable on the note, and of subjecting the property to the mortgage.

It is worthy of notice that during the trial and the admission of evidence, no bill of exception was taken to the introduction or rejection of any.

This suit embraces, therefore, two actions, the hypothecary and the personal.

The two causes are totally distinct. Both may be good, both bad, or one good and the other bad.

The defendant filed an exception of no cause of action, but on its being overruled she pleaded to the merits. We will not review the judgment on the exception, as its correctness will be virtually and practically tested in determining the merits of the case.

## I.

The plaintiff advances the proposition that a mortgagee who transfers his mortgage and the notes secured by it to a *third* person, warrants the legality and validity of said mortgage and of the debt evidenced by the note, and in a subsequent suit to enforce the mortgage brought by said third person against said mortgagee as third possessor of the mortgaged property, the latter is *estopped* from setting up the illegality or invalidity of said *mortgage*, and in support of that theory, he quotes the case of Saltzman vs. His Creditors, 2 R. 243; Barkdull vs. Herwig, 30 An. 618; Troplong, des Priv. et Hyp. vol. 1, No. 367; Grenier, des Hyp. vol. 1, No. 93.

We do not propose to inquire into the correctness of these authorities, either by contrasting them with article 2102 R. C. C., which refers to conventional and legal subrogation, and with the jurisprudence under it; or, by going into an elaborate discussion of the principles which, it is claimed, they consecrate; but we do not hesitate to say that they can have no application to a case like the present one, in which there was no assignment of the mortgage, said to have existed, for the reason that no such mortgage ever having had life, it could not be and was not transferred.

Pont, Priv. and Hyp., p. 214, Sec. 239.

In so saying we do not lose sight of the fact that the note in question was apparently secured by the act, by mortgage, as well in favor of the mortgagee as in favor of any subsequent *holder* of the note. We are not to be understood, however, as saying that in such cases, when the note passes from the mortgagee, the mortgage does not pass with it, for such is not our opinion, inasmuch as the mortgage does follow the note. But what we say is that the mortgage, when it does pass, is acquired in the same condition that it was in before the mortgagee parted with his rights, if any, under, or to the same. We assert and affirm the proposition, that a mortgage, when assignable and assigned, cannot be transferred to a third person, so as to give him any greater right than the mortgagee himself possessed. In so doing we are supported by justice, by law and jurisprudence.

Schmidt vs. Frey, 8 Rob. 435; 5 N. S. 56; 5 An. 495; Bouligny vs. Fortier, 17 An. 121; 26 An. 376; 28 An. 855.

In this case the evidence is conclusive that Mrs. Slocomb gave no consideration either for the note or for the mortgage which was a mere accessory to the principal obligation; that the notes had been issued, and the mortgage given to secure their payment, by a married woman, with the authority of her husband; that she has not received any consideration for the same, and derived no benefit from the issuing of the note and the giving of the mortgage.

Now, had Mrs. Slocomb never parted with the notes, which, the act says, were delivered to her as lender and as mortgagee, could she ever have, in case of non-payment at maturity, enforced payment by suit against Mrs. Urquhart, under the circumstances of this case? Assuredly not. She being the original holder and mortgagee, Mrs. Urquhart could undoubtedly have successfully pleaded, not only want of consideration, but also, if the amount had been received by her, that it had not enured to her benefit. It would have been the bounden duty, as a condition precedent *sine quâ non*, of Mrs. Slocomb, to have established affirmatively the consideration and the enurement to benefit denied. She had, therefore, no legal right to enforce payment of the note, and, to that end, to foreclose the mortgage. It cannot be nor is it denied, that the note, being negotiable, and passing to a *third innocent* party in due course of business, the want of a right, on the part of Mrs. Slocomb, to coerce payment of the note, merely as a negotiable instrument, could prove injurious or prejudicial to such third party, for such is not the law; but the rule does not obtain as to the mortgage, which is not *in its nature* negotiable. The notes were, on their face, notes issued and secured by mortgage by a married woman, with the *mere* authorization of her husband, for this is not the case of a married woman empowered by the judge to borrow and mortgage, under the provisions of Arts. 126, 127 and 128 of the R. C. C. This was sufficient notice to any third party, and to the world, to provoke inquiry as to whether the notes were issued for consideration enuring to the benefit of the drawer. 5 An. 495; 4 R. 508; 6 An. 590; 26 An. 376; 28 An. 855; Toullier 2, 622; Troplong 2, 1447; Marcadé 5, 1450; Dig. L. 50, Tit. 17, L. 19. The act of mortgage is not a negotiable instrument, and, unlike the notes which it apparently secured, when assigned, was subject to all equities between the original parties. If the plaintiff claim under the act, he makes himself a party to it, and is affected by the notice which the act itself affords: that the drawer of the note and the mortgageor had no right to incur the debt, utter the note and give the mortgage, *unless the amount enured to her benefit.* If the plaintiff do not claim under the act, then he abandons his hypothecary action, is a stranger to it, and has no reason to complain if the mortgage be pronounced a nullity, as given to secure notes, which themselves have no legal existence, and cannot be enforced against the drawer.

The plaintiff has, no doubt, realized this insuperable objection, for he does not so much contend that a mortgage existed, as that Mrs. Slocomb is *estopped,* being now the owner of the property, and having endorsed the "mortgage" note, from denying the validity and existence of the mortgage claimed.

The doctrine of estoppel, it is insisted, has never been carried to

-that extent, nor, it is said, can it be, in this State under our peculiar sys-tem of laws relative to the rights and obligations of married women. :21 An. 14, 476; 22 An. 369; 30 An. 53.

Whether it be so or not, does not matter, as the plaintiff, claiming under the mortgage as privy to it by his own act, cannot ask its en-forcement without, under the exceptional features of this case, estab-lishing its validity, even against the defendant, who, under no circum-stance, can be considered to have, by her endorsement, warranted its validity, although she may have warranted that of the debt.

When Mrs. Slocomb, as holder or bearer of the note and as mort-gagee, parted with the note and the mortgage, she transferred only those rights which she had to the mortgage, and no third person, how-ever innocent, can be heard to claim any greater rights. As Mrs. Slo-comb could not have enforced the mortgage consented, for the payment of the notes, her transferrees, whether original or subsequent, having acquired no greater rights than she herself had, cannot accomplish what she could not herself have done.

In the act of purchase by Mrs. Slocomb of the property appar-ently mortgaged, it does not appear that she assumed payment of the notes and a reversion of the mortgage in favor of any holder of the note. Not only is the act not reticent on the subject, but it distinctly provides that the purchaser will be kept harmless, owing to the exist-ence of the apparent encumbrance. We, therefore, conclude that, even if Mrs. Slocomb were liable personally for the note sued on, that note is not secured by mortgage on the property in question.

We do not wish to be understood, when deciding this case, on the validity of the mortgage in question, as saying, that where the holder of a note secured by mortgage, who was competent to bind himself by it, with or without consideration, parts with it, in the ordinary course of business, in favor of a third innocent party, such transferree's rights to the mortgage would be contingent upon the validity of those of the original mortgagee, to the mortgage, for any cause, simulation or other, which could effectually prevent the mortgagee from enforcing the mort-gage. Such is not the law. The doctrine which we maintain applies only to those cases in which the evidence of the obligation secured by mort-gage exhibits an illegal consideration, or puts the party legally upon the inquiry, whether the consideration expressed as received was or not so, and whether it did or not enure to the benefit of the party signing the instrument in person or by power, legal or conventional. 8 R. 435; 17 An. 171; 26 An. 376; 28 An. 855.

## II.

The next question which arises is whether the defendant can be treated as a *surety*, and if not, whether she can be held as an endorser,

although the note sued on was not presented for payment at maturity, and was not protested.

The views which we entertain as to the liability of Mrs. Slocomb, as an *endorser*, dispenses us from considering and determining her responsibility as a surety.

### III.

If Mrs. Slocomb were not liable as a surety, she would be responsible as an endorser, although no demand of payment was made, no protest took place, and no notice was given to her.

A review of the cases adjudicated and of the opinions of commentators satisfies us that the contract of endorsement is a distinct and separate one, by which the holder of a note, having possession of it, transfers it by his signature on it, with warranty as to certain matters, and binds himself eventually to its payment.

The endorser warrants the genuineness of the note, the competency of prior parties to bind themselves in their ostensible capacities, the validity of his own title to the note, the payment of the note at maturity, and in case of non-payment, when he has reasonable grounds valid in law to believe that it will be honored, he asserts his liability to pay the same.

As an original proposition, it cannot be denied, nor is it, that usually an endorser cannot be held liable, in the absence of demand, protest and notice, as provided by law. Such is assuredly the rule, but is it inflexible, is there no exception to it, does there exist no case in which the law admits excuses in justification of the absence of demand, protest and notice? A good deal has been written, and more said on the subject, and now, for the first time in this State, does the question occur for solution.

In the inquiry which we are about to institute, and the determination which we are to make on this vital matter, we promise that we have allowed ourselves to be guided—as the mariner is by the polar star—by the wise maxim of the law, which we deem is entitled to full application in this case, that *lex neminem cogit ad vana.* However, before proceeding further, it is material that we should first settle the *character* of the endorsement of the defendant, or the note sued on.

When that note came to the hands of Mrs. Slocomb, its appearance or complexion was that of the unconditional obligation, to pay money, of a married woman, to her own order, signed and endorsed by herself, with the authority of her husband, *for value received.*

In this last particular, under the evidence in this case, it was false, as no consideration had passed to her for it. It was valueless, as to Mrs. Slocomb, who not having given any consideration, could not prove that any had enured to her benefit, and who, therefore, could not enforce

payment of it in case of resistance on the part of Mrs. Urquhart. It could acquire no value, for the same reason, in the hands of even innocent third persons, for they would likewise have been powerless to show consideration and enurement to her benefit. To acquire any *legal* and, besides, *real* value, the note or paper had to become the evidence of an indebtedness, other than that of Mrs. Urquhart, by the act of a party competent to bind himself by his mere volition, and who would be responsible in point of solvency. It was not until that act had been done that the note or paper could have been considered as the evidence of a debt which third persons could absolutely enforce. The endorsement of Mrs. Slocomb was necessary to give to the *paper* life and validity, as the evidence of a debt; but that endorsement could not, and did not quicken a vitality not previously existing even *in embryo*, for it was then altogether lifeless as to its maker, who was also the apparent payee. The endorsement vivified it as an original evidence of a new and distinct indebtedness, binding primarily and solely upon Mrs. Slocomb as the first, and under the circumstances, the only person competent to incur an obligation. The note so signed and endorsed by Mrs. Urquhart with her husband's authority was not legally uttered, and was not binding upon her when it came to the hands of Mrs. Slocomb, nor had it been uttered when the latter endorsed it, as it was then in the possession of one who had not become the owner of it, who had given no consideration for it to the maker or to the mortgagee, and who could not enforce the payment of it. Even after it had been endorsed by Mrs. Slocomb, he himself could not, under any circumstance, have coerced payment of it, either against his wife or his mother-in-law, delivery to a person capable of enforcing payment being essential. Daniels on Neg. Inst., v. 1, pp. 56, 112; 2d. p. 540; 30 An. 89; 28 An. 358; 24 An. 36.

Mrs. Slocomb never legally owned the note. She endorsed it, not to infuse life into it as an original obligation of Mrs. Urquhart, but for the sole purpose of enabling Mr. Urquhart to use it, with her valuable security, either by discounting it, or using it as a collateral guarantee, for the payment of some obligation of his.

Under the circumstances of this exceptional case, the endorsement of Mrs. Slocomb must be viewed as being as well that of the payee as an original and independent contract, whereby she bound herself, primarily, to its payment. In either case would she be bound. Dealing with her then as with the original payee and endorser, let us consider whether she can set up, as a valid defense, want of demand, protest and notice, at maturity.

There can be no doubt that in its technical sense, endorsement means : writing one's name, with the intent to incur the liability of a party who warrants payment of the obligation, *provided* it be duly pre-

sented to the principal at maturity, and remain unpaid by him, and that these facts be seasonably signified to the endorser, the endorser affirming and warranting that the original parties to the note were competent to bind themselves in their ostensible capacity, otherwise they would not be real parties to it. Therefore it is, that if the drawer, acceptor or maker be an infant, a lunatic, or a *married woman* unauthorized to act and not liable, the endorser's affirmance or warranty is broken, and he can be sued, either upon the instrument itself, without proof of demand and notice, or for the recovery of the original consideration which has failed. When there is, in such a case, no principal party legally bound upon the note, both presentment and notice are superfluous, and can, therefore, well be dispensed with. Hence, also, when the note is void between the drawer and payee, on account of an illegal consideration, the endorser may be held without any proof of demand and notice. When he endorses such note, the endorser warrants by the very act that the drawer is legally liable to pay it, and practices a deception for which he is responsible, knowing, as he necessarily must, that such is not the case. The holder, in the belief of its truth, might look only to the maker, and fail to take the necessary steps to charge the endorser, and if, when he becomes aware that the maker was not legally bound for it, he could not recover against the endorser—the latter would be protected by his own fraud, and the holder suffer by the confidence placed in him !

So say, almost *verbatim*, the writers on negotiable instruments, and such is the jurisprudence on which the doctrine is based.

Besides : The principal excuses to justify absence of demand, and consequently of protest and notice, can be classed under two distinct heads: 1st, the impossibility of a demand; 2d, the acts, words or position of a party, showing that he has abandoned the right, or was not entitled to the demand, of the want of which he seeks to take advantage.

How far death, absence, insolvency, and other accidental circumstances, may justify the absence of demand, protest and notice, because of the impossibility of making any, has been extensively considered and treated by authors, and expounded by jurisprudence, but, as the inquiry is not presented in this case, we will not enter upon it. The excuse for a want of demand being offered on a different ground, we will now proceed to consider its sufficiency.

The payee may have waived demand, protest and notice, and in such a case he clearly could not plead the absence of such in bar to recovery against him; but where he has made *no such* waiver, he is entitled to the fulfillment of those formalities, *provided* he be in a position to require them, *provided*, by their non-fulfillment, he has been deprived

·of rights which he otherwise would have enjoyed. The authorities are numerous to that effect.

But in this case Mrs. Slocomb was not in a position to demand the observance of those ceremonies, and by their non-fulfillment she has lost no right which she otherwise would have possessed, for, under no imaginable circumstance, was she entitled to any against Mrs. Urquhart.

The reasons for this are obvious. She had no right to put in circulation, as a valid obligation, a note which she knew was, as to her, radically void, and which, under the evidence in this case, had been made to her knowledge by a married woman, not for her own benefit, but for the advantage of her husband, in derogation of a prohibitory law, and next, she knew that she could have no action against the maker, in case of non-payment, as that maker was under no obligation, legal or moral, to pay the same to her, and she was also aware that she had no reasonable ground, nay, no right whatever, to expect payment of it by her. The demand, protest and notice, had any taken place, could have conferred on her no right whatever against the drawer, and the absence or want of the same has taken none away from her. She has, therefore, no valid cause of complaint on account of their omission, and is amenable and chargeable for the debt pressed against her.

This view of the case is in full accord with the jurisprudence, and consonant with the teachings of commentators on the subject, predicated as they are, on commercial usages and customs, *long* established and respected, both in England and in this country.

We will not assume to quote particularly the authorities upon which we rely to justify our conclusions. We deem a collective reference to the main ones sufficient, without mentioning specially the language used in any one case, as, in the course of this opinion, we have copiously made the sayings of others our own, with some modification to suit our views. Daniels on Neg. Inst., vol. 1, p. 536, vol. 11, 142, 143, §§ 1112, 1113; Parsons on Bills and Notes, vol. 1, 353; 442-445, 463, 464, 532, 536 and *note*; 559, 560; Edwards on B. and N., 290, and the authorities substantially quoted in the notes. See, also, Copp vs. McDugall, 9 Mass. 1; Cundy vs. Marnott, 1 B. and A., 696; Farmers' Bank vs. Vanmeter, 4 Randolph (Va.) 557, 558; Erum vs. Downs, 15 N. Y. 575; Dalrymple vs. Hillenbrand, 2 Hun. N. Y. 488; also authorities collected in H. D. 1, p. 178; *Vo.* Bills and Notes iv (d) (2) No. 3; 25 An. 477; 24 An. 139; 19 An. 307.

The judgment of the lower court was entirely in favor of plaintiff, recognizing the validity of the mortgage, allowing attorney's fees under the act, for the prosecution of the suit for the payment of the note

sued on. It is erroneous, except so far as it allows the face of the note with the interest stipulated.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court, so far as it allows plaintiff five thousand dollars with eight per cent interest per annum from February 8th, 1876, until paid, and costs of suit, be affirmed ; and that in all other respects, it be avoided and reversed.

It is further ordered that as regards the claim of plaintiff to a mortgage and attorney's fees, plaintiff's petition be rejected with judgment in favor of the defendant.

It is further ordered that the plaintiff pay the costs of the lower court, and that he and the defendant pay the costs of appeal, share alike, from the date of appeal.