Hon. FÉLIX P. POCHÉ,
Hon. ROBERT B. TODD,
Hon. CHARLES E. FENNER,
Hon. THOMAS C. MANNING,
} *Associate Justices.*

---

### No. 8420.

### GEORGE SCHEPP VS. THOMAS SMITH.

The hypothecary action lies to compel payment of a note secured by mortgage, where the third possessor was made aware, by the recitals in his title, that the note represented by the vendor as paid was outstanding and that the inscription of the original mortgage was cancelled.

A third party acquiring such note before maturity, in good faith, in the ordinary course of business, for a valuable consideration, without any knowledge of its assumption by one who was not the drawer thereof, is not affected by equities which might exist between such party and his own vendor or a subsequent vendee, and is entitled to demand the surrender of the property mortgaged or payment of the note.

The third possessor is as effectually estopped from disputing the validity of the note and mortgage as his vendor would have been.

Parties who, by anticipation, pay mortgage notes for which they may be liable, should, at least, cancel or deface them after such payment, if not cause the mortgage inscription to be erased, in order to protect third parties.

Where one or two persons must suffer a loss, the law throws it upon him by whose negligence or fault the damage was occasioned.

APPEAL from the Civil District Court for the Parish of Orleans. Tissot, J.

1

Schepp vs. Smith.

*Robt. G. Dugué* for Plaintiff and Appellee :

The pledgee of a note can sue upon it in his own name, without disclosing the nature of his title, and recover the entire amount, subject to the obligation of returning to the person legally entitled to receive it, any surplus that remains after satisfying the pledge. 19 An. 526 ; 2 La. 264 ; 7 An. 225 ; 21 An. 5 ; 8 N. S. 370 ; 4 La. 219 ; 6 An. 757.

The defendant who pleads error, failure or want of consideration, must prove it   9 An. 20 ; 21 An. 731 ; 22 An. 457 ; 1 An. 325 ; 3 An. 331 ; 16 An. 367 ; 6 An. 757 ; 10 An. 683 ; 14 An. 14 An. 860 ; 26 An. 16.   Story on Bills, § 106 ; 1 Parsons, p. 255.

Possession of a mortgage note by the maker of it, or by the owner of the mortgaged property, extinguishes the note and the mortgage when he possesses in his own right. 4 R. 416. His possession of the note for another extinguishes neither the note nor the mortgage. 18 An. 36; 21 An. 5.

*W. S. Benedict* and *Jos. P. Hornor* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an hypothecary action. The only serious defense is the alleged payment of the note declared upon and the con‑ sequent extinction of the mortgage originally securing it and now sought to be enforced. From a judgment in plaintiff's favor this appeal is taken.

The following are the facts indisputably established :

Perrault, in December, 1875, issued two notes at 1 and 2 years, each for $5,750, and secured them by mortgage. The act was then duly recorded. He sold the property to Hencke in June, 1876, who, as part of the price, assumed the notes and the mortgage. The notes were marked *ne varietur* and paraphed by the notary, before whom the act of mortgage was executed. They were not identified with the act of sale by Perrault to Hencke. Subsequently, in May, 1879, the property was sold by Hencke or his succession to Thomas Smith, the defendant. The note at one year was exhibited, cancelled, while the second note was not produced. The certificate of mortgage attached to the act of sale, and alluded to therein, mentions the mortgage originally consented by Perrault. The act of sale to Smith contains the declaration that the first note was paid ; that the second note was also paid and returned to Perrault, who, afterwards, at the moment of the sale by him to Hencke, delivered it to the latter, from whose possession it went out improperly.

It appears also from the record that, on the 15th of March, 1877, an individual, Cambon, who was the manager of the plantation mort- gaged, issued his note for $3,908, signing it merely as " agent," with- out saying of whom, and to secure its payment to Schepp, the plaintiff, who had discounted it, pledged Perrault's unmatured note at two years. The original mortgage inscription was then extant on the proper mortgage record.

There is no evidence that the notes ever were negotiated by Perrault

or by Hencke, consequently none that either was ever due and paid. The act of purchase of defendant states that they were in Perrault's possession when he sold to Hencke and that he then delivered them to Hencke.

The charge is made by the defendant that Cambon, the plantation manager, took the second note from Hencke's possession and used it for his own purposes.

No evidence was adduced by the defendant to substantiate this attack, other than that of the plaintiff, who was sworn in Smith's behalf. He says that Cambon acted in the matter, that is, in signing the note for $3,908; in pledging that for $5,750 and in receiving the proceeds of discount, as the agent of Hencke.

It is worthy of note that at the time of the trial of the case, Perrault, Hencke and Cambon had disappeared from the scene of life, without having testified.

The glaring fact, therefore, is, that Cambon, acting as such agent, issued a note, for value actually received, and secured it by pledge of a mortgage note signed, not by *Hencke*, but by *Perrault*, and which was in no way connected with the act of sale by Perrault to Hencke.

Had the note been paraphed to identify it with the act, the defendant might perhaps have charged that the pledgee was thereby put on his guard, notified of the declarations contained in it and was bound thereby, and that the recitals therein mentioned the assumption by Hencke. But the fact is that the note was not thus paraphed, and nothing establishes that Schepp knew of the assumption. 8 R. 35; 14 An. 589.

The argument is unsound, that dealing with Cambon, both as Hencke's agent and as manager of the plantation, Schepp was bound to know and, therefore, knew that the property had ceased to belong to Perrault and was then owned by Hencke. Such argument cannot obtain, for the obvious reason that knowledge of the transfer to Hencke does not imply that of the assumption by him of the note and of the reversion of the mortgage. That was not an essential ingredient for the purchase of the property, which could well have taken place without Hencke's voluntary incurring such obligation.

If it be true that the second maturing note passed from Perrault to Hencke's possession, the only inference deducible would be that the note, prior to the date of the pledge, had not been *issued* and so was not *due* by either of those parties, and that the dormant mortgage had not risen from slumber. If such were the case, then the note was issued for the first time when it was pledged by Hencke's agent, acting as such. The agent's doings must then be viewed as those of the principal and binding on him. Had Hencke himself issued this note of

Perrault, assumed by him, he could not have been listened to plead confusion, because the inducements offered and the representations made by him having been accepted and acted upon by an innocent third party, in good faith, in his ordinary course of business, without any actual, constructive or possible knowledge of the pretended cause of extinction, he would have been effectually estopped from contesting the validity of either the note or the mortgage, which, principal and accessory, would have passed together as do substance and shadow.

When Smith purchased, he was made aware of the apparent existence of the incumbrance by the registry of the mortgage consented by Perrault; he was exhibited the first note, cancelled, but he was not shown the second note. He remained satisfied with the declaration that it had been paid, that the mortgage was extinguished, and that its inscription was a lifeless form and should be cancelled. He took the risk and, purchasing the property, he stepped in Hencke's shoes. That which his author would have been estopped from contesting, he is necessarily debarred from attacking.

If the defendant's theory be true, that Cambon was not Hencke's agent, that he had no authority to draw notes and borrow money for Hencke; that he stole the note in question, and this theory or defense prevails over and annihilates plaintiff's adverse testimony, offered by defendant, then the plaintiff must be viewed as having dealt with Cambon, as with a *bona fide* holder of Perrault's unmatured note secured by mortgage. From that standpoint his position would be stronger.

Schepp, the pledgee, did not know that the note had been assumed by Hencke. What he was bound to know was what he could have known and, in point of fact, what he did know: That was, that the note was signed by Perrault and was undefaced; that it was secured by mortgage by one who had the right to do so; that the inscription of this mortgage was uncancelled; that the note was unmatured and subject to no equity; that it was given him in pledge by one in possession of it and holding it presumably in the capacity in which he represented himself, and this to secure the payment of a discounted note, for which valuable consideration had been given. By exercising the most diligent search and inquiry, Schepp could have ascertained nothing beyond this.

Now, on the contrary, if it be true that the note came to Hencke's possession, it was in common honesty incumbent upon him, at least, to have cancelled it, if not also to have caused the inscription of the mortgage act to be erased. He could and should have done so, and he has not done it. He has kept the same undefaced and exposed, to be stolen and reissued to a third innocent holder, who cannot be made a

sufferer. His assign, who cannot plead ignorance, must stand the consequence of his author's and his own derelictions.

There exists another telling reason why it should be so and it is a powerful one that appeals strongly to the equity of the Court. It is this: that Hencke actually knew that such was his duty, but that he did not do it, for some occult purpose disclosed in the testimony of the notary heard in the case. That object avowedly was to retain the note, undefaced, in order eventually to use it some way or other, to shield himself and the property and thus defeat an apprehended adverse decision in a suit pending in the federal court, in which the mortgaged plantation was apparently seriously involved.

The defendant has no one to blame if, by his author's derelictions and his own indifference and negligence he is made to suffer. An innocent third holder, guilty of no laches, cannot be permitted to sustain a loss which should fall upon other shoulders.

We have carefully examined with unusual pains not only the authorities relied upon by the defendant, but also others having a bearing on the question. In none of them do we find either the characteristic features encountered in this litigation, or that the mortgage was permitted to be enforced after estoppel opposed to the mortgagor or those holding under him.

The three cases, in 4 R. 416, 19 An. 260 and 20 An. 263, have little or no application to the present controversy, as they lack material analogy.

In the first case, payment of the note had been pleaded, and the evidence showed that after it had been issued by the mortgagor, it had "come back" to his hands as drawer and that the plaintiff had obtained it from him directly.

In the second case, the holder of the note had acquired it two months after maturity, from the maker, with knowledge of the extinction of the debt.

In the third case, the note had been acquired, after publication of its loss in the public papers and after the inscription of the mortgage had been cancelled from the public record.

In the present instance the plaintiff did not know that Hencke had assumed the note; he did not acquire it from the drawer Perrault, and the inscription of the mortgage was extant at the time on the public records.

Whatever perplexities once existed, touching the power of a mortgagor to dispose himself of his notes secured by mortgage in favor of a nominal mortgagee, have been effectually dispelled by the ruling in the case of Merchants' Insurance Co. vs. Jamison, 25 An. 363. See also 21 An. 3, Succession of Dolhonde; 27 An. 561, Gardner vs.

Maxwell. These two last cases theoretically favor the recognition of the existence and validity of the mortgage, in favor of a third innocent holder, where the note is reissued by the maker before maturity.

Registry laws are artificial rules, the creatures of legislation. Their object is to notify third parties either of the transfer or incumbrance of property, or of the existence of certain contracts. They are designed for the protection of such parties who, while they are affected, must be benefitted thereby. The converse of the maxim: *Qui sentit commodum sentire debet et onus,* may well in such a case receive a just application.

A mortgage may be likened *pro tanto* to a purchase. A *bona fide* mortgagee is equally entitled to protection as the *bona fide* grantee or purchaser. So the assignee of a mortgage is on the same footing with the *bona fide* mortgagee. In all cases the reliance of the purchaser is upon the record. When that discloses an unimpeachable title, he receives the protection of the law as against unknown and latent defects. 16 Wall. 273; 19 Wall. 146; 95 U. S. 16; 47 Maine 513; Daniels on Neg. Inst. p. 685, § 834, *et seq.*

An unperempted and uncancelled mortgage inscription is, as to third persons, a notice, not only that a mortgage was consented, but also, that it is still alive as the accessory of an unextinguished obligation. It is both a warning and an inducement. It cannot, at the same time, proclaim the existence and non-existence of the mortgage.

The cancellation of the inscription is an epitaph on the tombstone of the pre-existing obligation.

The precedent most approaching the matter now under consideration, is that of Carpenter vs. Allen, 16 An. 435. In that case, after reviewing the decisions in 8 R. 435 and 14 An. 587, the Court states the question to be: " whether a person who finds a mortgage duly recorded, which has been executed by one having lawful authority to make the same, may acquire for a full price and in good faith such mortgage, notwithstanding equities may exist between the original parties to the instrument."

The Court solved the question in the affirmative: 1st, because when one of two innocent persons must suffer, the law throws the loss upon him by whose negligence or fault the damage was occasioned; and 2d, because a mortgage is a real right which, so far as third persons are concerned, can be created only by the observance of the forms of law. Like sales of real estate, it is necessary that it be properly recorded. Third persons, without actual notice, are not bound to look beyond the registry and may acquire the mortgage by notarial act, by private act, or by simple delivery of the note. Where the equities between the parties are equal, the legal title must prevail.

Schepp vs. Smith

This opinion is well considered, deliberate, conservative and commands itself. Vide also, 21 An. 3; 27 An. 561; Daniels on Negotiable Instruments, p. 685, § 834, et seq.; 16 Wall. 273; 19 Wall. 146; 95 U. S. 16.

Neither Hencke nor Smith can be heard to say, that when Schepp received in pledge the mortgage note declared upon, he did not acquire all the rights which originally attached to it and to the mortgage securing it. Schepp is entitled, therefore, to ask a surrender of the property, or payment of the debt which the collateral was designed to secure.

The conclusion thus reached is supported by law, justice and equity, and tends to give security in transactions of the description of that considered in this case. Holding differently would be to authorize debtors, ostensibly such by their own acts or culpable omissions, to take advantage of their own laches in order to prejudice and entrap innocent parties becoming bona fide creditors and to desecrate the sanctity of justice by closing the fatal door upon them.

·· There is no error in the judgment appealed from, which is affirmed with costs.

Mr. Justice Poché recuses himself, having been of counsel.

Mr. Justice Todd dissents.

## DISSENTING OPINION.

TODD, J. The following facts appear from the record to my satisfaction:

That Perrault gave a mortgage on the plantation named to secure the payment of two negotiable promissory notes executed by him for the sums mentioned.

That this plantation was subsequently sold by Perrault to Hencke, who, as part of the price, assumed the payment of these mortgage notes.

That the notes were taken up by Hencke and came into his possession either subsequent or prior to his assumption of them.

That without his knowledge or consent, the one sued on was taken from his possession and delivered to the plaintiff as collateral security for a loan made to the party thus delivering it, who professed to be acting as the agent of Hencke, and was treated as such agent by the plaintiff with whom he negotiated.

That this pretended agent acted without any authority from Hencke, and his acts were never ratified by Hencke.

That Hencke subsequently sold the plantation to the defendant, the act of sale containing the statement, substantially, that the notes had been settled and the mortgage extinguished.

I hold, under these facts, that Hencke having assumed the payment of these notes and having taken them into his possession, the presumption is, they were both paid by him in accordance with his obligation, and the notes and mortgage securing them thereby were extinguished. And also, that Hencke being the owner of this plantation, under his purchase, as soon as he became the holder of the note and mortgage, the mortgage being on his own property became extinguished by confusion.

It is true that the note, although reissued without Hencke's authority or knowledge, being delivered to the plaintiff for value, and without notice, revived or kept in force the liabilities of the parties to the note, and that the holder was not affected by any equities between these parties. This results, however, exclusively from the rules of the commercial law, only adopted in furtherance of the negotiability of commercial paper and for the protection of the *bona fide* holders of such papers.

Mortgages, even mortgages accessory to and securing negotiable instruments, are, however, not subject to such rules and are not governed by the commercial law. The law governing mortgages and the liabilities of mortgagors and mortgaged property, whether the mortgages are the accessories of negotiable paper or not, is to be found in the Civil Code. The first and elementary principle of which is, that a conventional mortgage cannot be created, re-created or revived without the consent of the mortgagor. As to its transfer or assignment, a mortgage stands on the same footing of all other property; that it cannot be validly sold or conveyed without the consent or authority of the owner.

This, in my opinion, is settled by frequent adjudications. Thus, in the case of Hill vs. Hill, 4 Rob. 416, I find the following language of this Court:

"This act shows that these notes were delivered to the payee, and the notes, themselves, exhibit the endorsement of the payee to Wm. Henderson, and of the latter to some other person. The evidence shows that they came back into the hands of the maker some time after their date and before maturity. From the moment Jno. S. Walton became the owner of these notes drawn by himself, the debt evidenced by them was extinguished by confusion. C. C. 2214. But it is argued by the appellant's counsel, that the extinction of the debt between the maker and the payee did not incapacitate the former from contracting a new debt to Hill and handing over to him, as evidence of it, the same notes secured by mortgage on his property; that Hill could have recovered on these notes from John S. Walton, and can, therefore, pursue his property, since sold, subject to the debt.

To this argument the answer is obvious: that the notes thus reissued by the drawer undoubtedly bind him, but by replacing them in circulation he cannot revive the obligations of the other parties to the notes or the mortgage on the defendant's property, which, being only an accessory to the debt between the maker and payee, became null and void as soon as the debt itself was extinguished."

And again, in the case of Doll vs. Rizolli, 20 An. 264, we quote as follows:

" But the question of the mortgage rests upon a different principle. When, as is shown, the note was paid and came into the possession of the maker and mortgagor, confusion took place, and the subsequent reissue of the note could not revive the mortgage. A mortgage is but accessory to the principal obligation, the extinction of which releases the mortgage. Mortgages not being negotiable, are not subject to the rules of commercial law, by which the rights and obligations of the parties to commercial paper are fixed."

My conclusion is, that the mortgage which is sought to be enforced in this case was extinguished in the manner stated, and that it was never revived.

Nor can I concede, that from the fact that the mortgage note was stolen from Hencke, or taken from his possession without his knowledge and negotiated without his authority or consent, either he or his vendee, the defendant, was estopped from urging the extinguishment of the mortgage; or that the failure of Hencke to have the inscription of the mortgage cancelled had the effect of continuing the mortgage in force after its extinguishment, against or in favor of any one.

For these reasons, I dissent from the opinion of the majority of the Court.

Rehearing refused.