(55 South. 372.)

No. 18,304.

DAVIS v. WELCH, Sheriff, et al.

(April 24, 1911. On Application for Rehearing, May 22, 1911.)

*(Syllabus by the Court.)*

1. ESTOPPEL (§ 3*)—BY PLEADING.

An allegation in a petition for executory process that the note proceeded on was received in pledge on a certain date does not estop the plaintiff from thereafter alleging, in answer to a petition for injunction, that the note and pledge were so received as continuing security for a balance due upon a pre-existing debt to secure which they were already held by the pledgee.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 3; Dec. Dig. § 3.*]

2. NOVATION (§ 4*)—SUBSTITUTION OF NEW OBLIGATION BETWEEN SAME PARTIES.

The taking of a new note in partial renewal of an old one, upon which a payment on account is made, does not operate a novation, or extinguish the original debt or the pledge securing the same.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 4; Dec. Dig. § 4.*]

3. BILLS AND NOTES (§ 365*) — BONA FIDE PURCHASER.

Where one executes a negotiable promissory note and a mortgage to secure the original holder and all subsequent holders thereof, and delivers the note to the said original holder, to be used by him in raising money for the use of the maker, and the money is so raised (by a pledge of the note, before maturity, to one who takes it in good faith and without notice of any equities or vices which may affect it), and is deposited to the credit of the maker and drawn out by him or his authorized agent, there can be no question as to the maker's personal liability, and this whether his agent drew the money and used it for his own purposes, or whether, having been furnished by the maker with the means wherewith to pay the note, he used such means and left the note unpaid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 959; Dec. Dig. § 365.*]

4. BILLS AND NOTES (§ 330*) — BONA FIDE PURCHASER—NOTICE OF TRANSFER.

There is nothing in Civ. Code, art. 3158, as amended by Act No. 157 of 1900, upon which to rest the proposition that, in order to affect the maker of a mortgage note, and identify him with the pledge of the note to a third person, so as to cut off equities which may have existed between him and the original mortgagee, it is necessary that he be notified of the pledge.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 330.*]

5. MORTGAGES (§ 258*)—BONA FIDE PURCHASER—MORTGAGE NOTE.

It is true that a mortgage is not negotiable; but it is also true that a mortgagor cannot under all circumstances set up against an innocent transferee of the mortgage the equities that he might set up against the original mortgagee. The rule upon that subject has been stated as follows: "A bona fide holder of a mortgage note, acquired before maturity, secured by mortgage, duly recorded, which has been executed by one having lawful authority to make it and bearing on its face nothing to impeach its validity, cannot be defeated in his mortgage rights by secret equities between the original parties, or arising after its execution, of which neither the act nor the public records afforded any notice, and of which he had no ac-

tual notice, at least, when such equities are opposed by the original mortgagor or in his right."

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 689–691; Dec. Dig § 258.*]

Appeal from Fifth Judicial District Court, Parish of Caldwell; George Wear, Judge.

Action by Ivy I. Davis against W. C. Welch, Sheriff, and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Munholland & Dawkins, T. E. Furlow and W. S. Parkerson, for appellants. Lamkin & Millsaps and Stubbs, Russell & Theus, for appellee.

Statement of the Case.

MONROE, J. The liquidators of the State National Bank obtained executory process on plaintiff's mortgage note for $15,000, dated February 25, 1904, and made payable December 15, 1904, with interest at 8 per cent. per annum from date, alleging in their petition:

"That the said State National Bank of New Orleans is the holder, in good faith, as pledgee, * * * of a certain * * * note of Ivy I. Davis, * * * which said note was on January 15, 1906, pledged to the said * * * bank * * * by the late R. B. Blanks, * * * and by him indorsed in blank, and delivered to the said * * * bank * * * to secure his own promissory note, of even date with the said pledge, made and signed by the said R. B. Blanks * * * for $10,150, with interest at the rate of 8 per cent. per annum from date until paid."

Plaintiff enjoined the execution of the writ, alleging:

"That on or about the 25th day of February, 1904, he executed a note for $15,000, payable to his own order and by him indorsed in blank, due December 15, 1904, and, in order to secure the * * * payment of said note, he executed a conventional mortgage in favor of R. B. Blanks, or any future owner or holder of said note, on the following described lands [describing them]; that said note and mortgage were executed and delivered to the said R. B. Blanks to secure the said Blanks for supplies and money to be furnished by said Blanks to your petitioner to make his agricultural crops on the mortgaged and other premises during the year 1904, and evidenced no indebtedness whatever at the date of the execution of said note and mortgage, but were to be used by the said

Blanks in raising for the purpose of advancing to your petitioner necessary money and supplies to make and gather his said agricultural crops during the year 1904; * * * that of the crops of 1904 he made and gathered more than 850 bales of cotton, which were turned over to said R. B. Blanks for account of your petitioner, and were by him sold, and all indebtedness of every nature and kind due by your petitioner to the said R. B. Blanks was paid out of the proceeds of said cotton; * * * that, being a brother-in-law of the said R. B. Blanks and having implicit confidence in his integrity, and being partially paralyzed and otherwise afflicted, he trusted his business, as well as his valuable papers, to the said R. B. Blanks, and believed that said note had been properly satisfied and placed with the other valuable papers belonging to your petitioner in the hands of said Blanks, and the mortgage duly canceled, until recently, when he had notice of the filing of suit No. 1,103, * * * by which suit said satisfied and extinguished note and mortgage is attempted to be executed and the mortgaged property sold * * * to pay the same; * * * that if said note was ever pledged to the * * * bank, * * * as alleged in the petition in said suit No. 1,103, said pledge was made long after the maturity of said note and long after same had been extinguished by payment; * * * that R. B. Blanks died during the year 1908, and his widow has qualified, and is now acting as administratrix of his succession. * * *"

He prays that said administratrix and the liquidators be cited, and for judgment decreeing the note to have been satisfied and ordering the mortgage to be canceled. The liquidators answered, alleging that the note was pledged to the bank on March 21, 1904, to secure a note for $15,000 of even date with the pledge, executed by R. B. Blanks, and due on or about December 15, 1904, with interest at 8 per cent. per annum from maturity; that on December 20, 1904, $5,000 was paid on said note, and the balance remained unpaid; that on January 15, 1905, Blank executed his note for $10,150 "in renewal and as a continuance of said balance, and the said note of Davis for $15,000 remained specifically pledged to the bank, and in its hands, to secure the payment of this last-named note of Blanks, and respondent shows that continuously since March 1, 1904, the said note of Davis for $15,000 * * * has remained pledged to, and in the hands

of, the said bank and its liquidators * * * to secure the continuous and uninterrupted indebtedness of the said Blanks, * * * evidenced by his note of March 21, 1904, for $15,000, and his note of January 15, 1904, for $10,150, in renewal of the balance due on the same, which remains due and unpaid."

Blanks' widow and administratrix also answered that the note in question was given by Davis to enable him to obtain money and supplies wherewith to make his crops; that Blanks sent it to the bank, to be discounted, and was informed that, being a national bank, it could not deal in mortgage paper, but would discount Blanks' note, with the other as collateral, which it did, and that the proceeds of the discount were credited to Davis' account in the Merchants' & Farmers' Bank of Monroe; that thereafter $5,000 was paid on the debt due to the bank, and Blanks gave his note for $10,150 for the balance; that no part of the proceeds of the original discount was used by Blanks, and that no part of the balance of $10,150 has been paid; that Davis has received credit for all that he is entitled to, and that Blanks rendered to him, and later to Mrs. Davis, statements of account to which no objection has been made.

The sheriff also answered, and thereafter the liquidators filed a plea of estoppel.

When the case was called for trial, the administratrix of Blanks asked leave to withdraw her answer, which she was allowed to do, over the objection of the liquidators. The liquidators then asked leave to file an amended answer, reading, in part, as follows:

"That at the time the petition in suit No. 1,103 * * * was prepared by their attorney, * * * through an oversight or mistake, only the renewal note of R. B. Blanks, deceased, of January 15, 1906, and the renewal form of pledge, together with the mortgage note which is sought to be foreclosed, were sent to the said attorney, and he did not have before him all the facts and circumstances surrounding the character of the indebtedness and the manner in which the said * * * bank came into possession of said mortgage note and pledge, and that the allegation with reference to the pledge having been made on January 15, 1906, was an error of fact; that in truth and in fact the said mortgage note was originally pledged to said * * * bank on March 21, 1904; that said mortgage note remained and continued in the possession of said bank and respondents, as liquidators, from that date until this time, for the purpose of the securing of an original loan of $15,000, made on a certain note of R. B. Blanks for a like amount, but which was subsequently reduced, as alleged in the original answer herein, and that each and all the forms of notes and pledges subsequently executed renewing the same were done merely in conformity with the universal rule of banks against keeping on hand or carrying past-due paper, and the laws governing national banks, and without any intention of novating said debt."

Plaintiff objected to the filing of the amended answer on the ground that as the liquidators had alleged in the petition for executory process that the note in question had been received in pledge by the bank on January 15, 1906, and, as it so appeared from the written act of pledge filed by them, they should not be permitted to assert the contrary; and the objection was sustained, as was also plaintiff's objection to certain evidence offered by defendants, which was, however, brought up in connection with bills of exception.

The facts are as stated in the pleadings of the defendant—that is to say, the note was originally pledged to the bank on March 21, 1904, as collateral to Blanks' note for a like amount, and when, on January 15, 1906, Blanks paid $5,000, he gave the note of $10,150, as representing the balance due, leaving the mortgage note to secure the said balance as it had originally secured the whole amount. On the other hand, it appears that considerable cotton was shipped from the crops of 1904 for account of Davis to Blanks. It also appears that Davis was partially paralyzed in June, 1904, and that Blanks, who was his brother-in-law thereafter attended to his business for several years, and that Blanks died in 1908. A brother of

Davis' testifies that he tried several times to get a statement of account from Blanks, but he does not say why he did not get it.

## Opinion.

The original answer filed by the liquidators tells the story of the note sued on just as it is told in the amended answer, and there was no reason for filing the latter save for the purpose of explaining how it happened that in the petition for executory process it was alleged that the bank had received the note in pledge on January 15, 1906, and that its previous acquisition and possession were not alluded to. We are, however, of opinion that the amendment should have been allowed, as an allegation giving the previous history of the note would have been irrelevant and unnecessary for the purposes of the proceeding via executiva, and there is no conflict between the allegation as made in that proceeding that the note was pledged to the bank on January 15, 1906, and the allegation subsequently made by way of answer to plaintiff's petition, and, when it became necessary, that the pledge thus referred to was merely a renewal or continuation of the original pledge and secured the balance due on the original debt; nor was the plaintiff led into any error by the allegation first made, which operates to his prejudice by reason of that last made. [1] Moreover, the allegation in the petition for executory process was made by the attorney of the liquidators, to whom the note was sent (from New Orleans to the country) for collection, in error of the fact, and they were entitled, if it were necessary, to correct it. Watkins v. Cawthon, 33 La. Ann. 1194; 31 Cyc. p. 903. See, also, Succession of Harris, 39 La. Ann. 445, 2 South. 39, 4 Am. St. Rep. 269; Stockmeyer v. Oertling, 38 La. Ann. 102; Lachman & Jacobi v. Block & Bros., 47 La. Ann. 506, 17 South. 153, 28 L. R. A. 255; Brant v. Virginia, 93 U. S. 335, 23 L. Ed. 927; City of New Orleans v. R. G.

Sheppard, 10 La. Ann. 268; Blanks v. Klein, 53 Fed. 436, 3 C. C. A. 585.

[2] The taking of a new note in partial renewal of an old one upon which a payment on account is made does not operate a novation of, or extinguish, the original debt or the pledge securing the same. Bank v. Slocomb, 34 La. Ann. 927; Baker v. Frellsen, 32 La. Ann. 822.

Counsel for plaintiff say in their brief:

"A mortgage can have no existence independently of the principal obligation. Nevertheless the latter may possess qualities that do not inhere in the mortgage. For instance, the principal obligation may possess the quality of negotiability, but the mortgage is never negotiable, wherefore it is respectfully submitted that in order to affect a maker of a mortgage note and identify him with the pledge of the note, so as to cut off equities between the maker and mortgagor and the original mortgagee, it is necessary that the mortgagor and debtor be notified of the pledge. This is the express requirement contained in article 3158 of the Civil Code, as amended by Act No. 157 of 1900. There is no pretense that the plaintiff in this case ever had formal notice of the pledge."

[3] The plaintiff in this case executed a negotiable promissory note and executed a mortgage to secure the original and all subsequent holders, and he alleges in his petition that he delivered it to the original mortgagee "to secure him for money and supplies, to be furnished, and that it was to be used by the said Blanks in raising, for the purpose of advancing to your petitioner, necessary money and supplies to make and gather his said agricultural crops during the year 1904."

Well, the note was used as the plaintiff says that he intended that it should be used. Blanks obtained money on it from the bank, and the money was placed to the credit of plaintiff's account (in another bank) and was drawn out, either by him or an agent duly authorized; and, the note being negotiable and having been transferred to the bank before maturity, there can be no question as to plaintiff's personal liability on it; and this whether plaintiff's agent drew the

money and used it for his own purposes or whether having been furnished by plaintiff with means wherewith to pay the note he used such means for his own purposes and failed to pay the note. [4] The proposition that, in order to affect the maker of a mortgage note and identify him with the pledge of the note to a third person, so as to cut off equities between the mortgagor and the original mortgagee, it is necessary that the mortgagor be notified of the pledge, finds no support, at all events, in the law to which the learned counsel refer. The article No. 3,158 is found under the title of "Of Pawn," and does not deal with mortgages at all, and, as to negotiable promissory notes, it provides that no other formality is required in pawning them than that they shall be delivered to the creditor; and the same thing may be said of the amendatory Act No. 157 of 1900. It is true that a mortgage is not negotiable, but it is also true that the mortgagor cannot under any and all circumstances set up against the innocent transferee of the mortgage the equities that he might set up against the original mortgagee. The rule upon the subject is:

[5] "That a bona fide holder of a negotiable note, acquired before maturity, secured by mortgage, duly recorded, which has been executed by one having lawful authority to make it, and bearing on its face nothing to impeach its validity, cannot be defeated in his mortgage rights by secret equities between the original parties or arising after its execution, of which neither the act nor the public records afforded any notice, and of which he had no actual notice, at least, when such equities are opposed by the original mortgagor, or in his right." Bank v. Flathers, 45 La. Ann. 78, 12 South. 243 (citing Carpenter v. Allen, 16 La. Ann. 435; Gardner v. Maxwell, 27 La. Ann. 562; Taylor v. Bowles, 28 La. Ann. 294; Davis v. Greve, 32 La. Ann. 420; Butler v. Slocomb, 33 La. Ann. 170, 39 Am. Rep. 265).

See, also, Schepp v. Smith, 35 La. Ann. 1; Lester v. Sheriff, 46 La. Ann. 344, 15 South. 4; Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570; Layman v. Vicknair, 47 La. Ann. 679, 17 South. 265; Dreyfous v. Childs et al.,

Loch & Bros. Interveners, 48 La. Ann. 872, 19 South. 929; Baker et al. v. Lee & Parker, 49 La. Ann. 874, 21 South. 588; Douglass v. Douglass et al., 51 La. Ann. 1469, 26 South. 546.

Since the appeal was lodged here, the original liquidators have been succeeded by Louis Kohlman, Charles A. Morgan, and Warren Kearny.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of Louis Kohlman, Charles A. Morgan, and Warren Kearny, defendants in injunction, rejecting the demands of the plaintiff dissolving the injunction herein issued, and maintaining in full force and effect the writ of seizure and sale issued in the suit of Charles Godchaux et al. v. Ivy I. Davis, No. 1,103, of the civil docket of the district court. It is further adjudged that the right of said defendants to sue for damages resulting from the issuance of the injunction herein be reserved. It is further decreed that plaintiff pay all costs.

SOMMERVILLE, J., takes no part herein.

On Application for Rehearing.

MONROE, J. The attention of the court has been called to the fact that the decree which has been handed down fails to credit plaintiff in injunction with the $5,000 paid December 20, 1904, on account of the note sued on by defendants in injunction. The credit would, of course, have been allowed if the attention of the court had been called to the matter, but plaintiff in injunction brought his suit upon the theory that the whole of the original debt of $15,000 had been paid, and it was argued upon that theory, orally and by brief, in this court, and it never occurred to counsel upon either side, until the case had been decided, to suggest that, in any event, the credit of $5,000 should be allowed. The

necessity for allowing the credit was, therefore, overlooked by the court as it had been by the counsel, and the omission will now be supplied:

It is, therefore, ordered, adjudged, and decreed that the judgment heretofore rendered by this court be set aside, and that the judgment appealed from be now so amended as to make perpetual the injunction sued out by plaintiff herein to the extent of restricting the seizure under the writ enjoined to the enforcement of the claim of the plaintiffs in the seizure, subject to a credit of $5,000, as of date December 20, 1904, with interest at the rate of 8 per cent. per annum from that date, and otherwise dissolving said injunction, and maintaining in full force and effect the writ of seizure and sale as issued in the suit of Charles Godchaux et al. v. Ivy I. Davis, No. 1,103 of the civil docket of the district court. It is further adjudged and decreed that defendants in injunction pay all costs incurred in the district court, and that plaintiff in injunction, appellee herein, pay the costs of the appeal.

Rehearing refused.