162 So.2d 761 (1964)
POLK CHEVROLET, INC.
v.
Vince J. VICARO.
No. 6104.
Court of Appeal of Louisiana, First Circuit.
April 6, 1964.
*763 Harrison G. Bagwell, Baton Rouge, for appellant.
Joseph H. Kavanaugh, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
This appeal is by defendant, Vince J. Vicaro, from a deficiency judgment rendered against him, as co-maker of a promissory note, in favor of appellee, Polk Chevrolet, Inc., in the sum of $1,010.32, together within interest at the rate of 8% per annum from April 1, 1961, until paid, plus the additional sum of 25% on both principal and interest, as attorney's fees, and costs.
The note in question, dated April 30, 1959, was signed by present defendant, Vince J. Vicaro, and his son, Samuel J. Vicaro, and represented the balance due on the sale price of an automobile purchased by said Samuel J. Vicaro which said vendee simultaneously granted a chattel mortgage on the vehicle as security for the note. Appellee subsequently transferred the note to General Motors Acceptance Corporation (sometimes hereinafter referred to simply as "GMAC"), said transfer being by full or special endorsement.
On December 29, 1960, Samuel J. Vicaro executed another promissory note made payable to the order of GMAC, the primary purpose of which was to effect a rearrangement of the installments due under the prior note of April 30, 1959. The latter note, which was not signed by defendant herein, expressly provided that the terms of the former instrument, except as to the modification and rearrangement of installments, were to remain in full force and effect.
Subsequently, plaintiff herein obtained judgment against Samuel J. Vicaro in a suit brought on both said notes for the unpaid delinquent balance due on the indebtedness. In execution of said judgment plaintiff caused the mortgaged property to be sold, with appraisement, and instituted the present action against defendant as co-maker of the initial note, for the aforesaid deficiency.
Although defendant, for all practical purposes, concedes the correctness of the pertinent facts as hereinabove set forth, the following defenses are presented: (1) an exception of no right of action based on the contention plaintiff is without interest herein considering plaintiff's assignment of the note in question to GMAC; (2) an exception of no cause of action predicated upon the alleged extinguishment of the note sued upon by novation; (3) by reducing the obligation to judgment against the maker, Samuel J. Vicaro, defendant has been released from the obligation inasmuch as the debt became merged into the judgment obtained against the maker and no longer exists as a distinct obligation; (4) defendant, as accommodation maker, was discharged by plaintiff's seizure and sale of the mortgaged property in an action against the maker alone without making defendant a party to such action thereby depriving defendant of his right as surety to subrogation to the rights, mortgages and privileges possessed by plaintiff; and (5) release of defendant from liability by the discharge in bankruptcy obtained by the maker, Samuel J. Vicaro.
Defendant's exception of want of interest predicated upon the lack of endorsement from GMAC to plaintiff is without merit under the circumstances attending the present case. As previously noted, the transfer from plaintiff to GMAC was by special or full endorsement.
*764 Prior to adoption by this state of the Uniform Negotiable Instruments Act presently in force, the jurisprudence was established to the effect that an endorser who regains possession of a negotiable instrument is regarded as holder and owner thereof notwithstanding it might contain full or special endorsements subsequent to his, which he might strike. Squier v. Stockton, 5 La.Ann. 120. It was also held that where the first endorsement is in blank, the instrument becomes negotiable by delivery irrespective of subsequent endorsements. Hill v. Holmes & Smith, 12 La. 96. The jurisprudence held that a note endorsed in blank was considered bearer paper and all endorsements posterior to that of the payee could be stricken out on trial. Gaines v. Morris, 6 Rob. 4.
The foregoing jurisprudence was codified by the legislature of this state when it adopted the Uniform Negotiable Instruments Act, the following provisions of which are germane to the issue presently under discussion:
LSA-R.S. 7:40
"S 40. Special indorsement of instrument payable to bearer
"Where an instrument, payable to bearer, is indorsed specially, it may nevertheless be further negotiated by delivery; but the person indorsing specially is liable as indorser to only such holder as make the title through his indorsement."
LSA-R.S. 7:48
"S 48. Striking out indorsement
"The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby relieved from liability on the instrument."
Those jurisdictions which have adopted the Uniform Negotiable Instruments Act have interpreted the applicable provisions of the statute as establishing rules precisely conformable with the views set forth in the hereinabove cited authorities as evidenced by the following which we quote with approbation from 10 C.J.S. Bills and Notes, § 212b, Page 698:
"* * * Where a negotiable instrument is indorsed in blank, subsequent blank indorsements need not be considered so far as concerns passing title to the paper, and a negotiable instrument indorsed in blank followed by an indorsement in full is still payable to bearer, although, as against the special indorser, title must be made through his indorsee." (Emphasis added.)
In 10 C.J.S. Bills and Notes, § 215b (2), Page 706, we note the following applicable rule:
"* * * Where an indorser of negotiable paper becomes the holder by retransfer, he may strike out his own indorsement, and all indorsements subsequent to his own, whether special or not."
The note in question was made payable to the order of "Myself (Ourselves)" and was endorsed by the makers in blank. It thereby became bearer paper and, pursuant to the hereinabove cited provisions of LSA-R.S. 7:40, was therefore negotiable by delivery notwithstanding subsequent special endorsements thereon. It is significant that the record contains a notarial act by the Credit Manager of GMAC evidencing the re-transfer and assignment of the note and the indebtedness represented thereby to plaintiff. Under such circumstances plaintiff was entitled to strike its own endorsement which was not necessary to plaintiff's title.
Novation is a contract consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place. To constitute a novation there must simultaneously occur *765 both the cancellation of a present or outstanding obligation and the substitution in its place of a new obligation with the consent of the parties concerned. LSA-C.C. Article 2185.
It is clear that defendant's obligation on the note, being that of co-maker, was in solido. Therefore, if, as contended by defendant, execution of the second note by his solidary obligor, Samuel J. Vicaro, operated as a novation of the first note, defendant was released and discharged from all obligation thereon. LSA-C.C. Article 2198.
Novation, however, is never presumed. Johnson v. Johnson, 235 La. 226, 103 So.2d 263; Hayes v. Claterbaugh, La. App., 140 So.2d 737. For novation to result the discharge of the original debtor or obligor must be express. LSA-C.C. Articles 2185, 2187, 2190, Hayes v. Claterbaugh, supra.
It is equally well settled that modification of an obligation does not effect a novation unless the intention of the parties to novate the obligation is clear and explicit. Rex Finance Co. v. Cary, La.App., 145 So.2d 672 (affirmed on other grounds, 244 La. 675, 154 So.2d 360). The taking of a new note in partial renewal of an old one, does not operate a novation or extinguish the original debt or the pledge securing same. Davis v. Welch, 128 La. 785, 55 So. 372.
In the case at bar there was patently no intention to novate the preexisting indebtedness by the execution of the second note by Samuel J. Vicaro alone. On the contrary, the latter instrument, in referring to the mortgage of April 30, 1959, states "the terms and provisions of which document except as modified by this rearrangement of installments, remain in full force and effect." Such language clearly refutes an intention to novate the original indebtedness. Inasmuch as there was no intention on the part of either obligor or obligee to cancel the existing indebtedness, execution of the second note did not operate as a novation. The asserted defense of release by novation is therefore without merit.
Defendant's next contention is that as co-maker of the note he was discharged from the obligation when plaintiff reduced the indebtedness to judgment against defendant's solidary obligor, Samuel J. Vicaro. This contention is likewise without merit in view of LSA-C.C. Article 2095 which governs the obligations of solidary obligors and provides as follows:
"Art. 2095. Creditor's rights against
 other debtors after suit
 against one
"Art. 2095. A suit brought against one of the debtors does not bar the creditor from bringing suits on the same account against the others."
Predicated upon the foregoing codal authority, the jurisprudence holds that a creditor may proceed against any solidary obligors in separate actions and may execute against each separately until the indebtedness is satisfied. Rex Credit Co. v. Long, La.App., 159 So. 359. Suit against one co-debtor in solido does not bar a creditor from bringing suit on the same account against others solidarily liable thereon. Martin v. Mud Supply Company, Inc., La. App., 111 So.2d 375. It follows that defendant herein was not discharged from the obligation by rendition of judgment against his aforesaid co-maker on the indebtedness.
Defendant next contends he was merely an accommodation maker or surety on the original note which was secured by a chattel mortgage and privilege on an automobile. In this regard defendant argues his obligation was secondary and entitled him to subrogation to the creditor's rights, including the chattel mortgage and privilege, upon satisfaction of the debt secured thereby. On this premise, defendant reasons that *766 plaintiff, by proceeding against the principal obligor alone and executing against the mortgaged property, deprived him of his subrogation rights thereby entitling defendant to be discharged from the obligation.
The issue thus presented is controlled by the provisions of LSA-R.S. 7:29 which defines and fixes the liability and accountability of an accommodation maker as follows:
"S 29. Accommodation party; liability
"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."
An accommodation maker on a note is primarily liable to the same extent as a maker who receives value. Bank of Baton Rouge v. Hendrix, 194 La. 478, 193 So. 713. All signers of a note who bind themselves in solido for its payment, as to the holder are primarily liable, notwithstanding as between themselves they may be liable only as accommodation indorsers or sureties, with the right of recourse against the true maker. Continental Bank & Trust Co. v. Bouterie et al., La.App., 169 So. 812; Continental Bank & Trust Co. v. Simmons, La.App., 177 So. 384.
Under circumstances analogous to those in the case at bar, it has been held that a co-maker is not discharged. Thus in Rex Credit Co. v. Long, La.App., 159 So. 359, where movable property mortgaged to secure a note was transferred to a creditor for private sale with the proviso the proceeds would be applied to the indebtedness, a co-maker bound in solido but not a party to the chattel mortgage given to secure the note, was held liable for the remaining unpaid portion of the debt. Defendant herein, though an accommodation maker, is nevertheless a primary obligor and is liable for the unsatisfied portion of the debt to the same extent as the maker for value. The authorities cited by esteemed counsel for defendant are clearly without application to the case at bar. Wilson v. Brian, La.App., 81 So.2d 142, involved suit against a secondary obligor who defended on the ground plaintiff sold the mortgaged property subsequent to alleged illegal conventional repossession without the consent of the mortgagor. Under such circumstances the court properly held the action of the creditor operated as a release of the secondary obligor. Glass v. McLendon, La.App., 66 So.2d 369, hold an accommodation endorser to be discharged from liability by virtue of the creditor's voluntary release of the security given by the primary obligor. In the present matter there has been no release by plaintiff nor illegal conventional repossession and sale. On the contrary, plaintiff proceeded against the mortgaged property in due course and form inasmuch as the mortgaged property was seized and sold by judicial process, with appraisal. Under such circumstances plaintiff was entitled to proceed against any or all of the solidary obligors to collect the resulting deficiency.
Defendant's final contention is that the discharge of his co-maker, Samuel J. Vicaro, in bankruptcy proceedings operated a discharge of appellant as well. The answer to this contention is that it is well established law that the discharge in bankruptcy of the maker of a negotiable note does not release a co-maker. Title 11 U.S. C.A. § 34; All Hans Credit Union v. Saucier, La.App., 143 So.2d 281.
Accordingly, the judgment of the trial court is affirmed at appellant's costs.
Affirmed.