199 So.2d 568 (1967)
Leland H. COLTHARP, Sr., Plaintiff-Appellant,
v.
The CALCASIEU-MARINE NATIONAL BANK OF LAKE CHARLES, INC., et al., Defendants-Appellees.
No. 2008.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1967.
Rehearing Denied June 22, 1967.
*569 Hall & Coltharp, by H. O. Lestage, III, DeRidder, for plaintiff-appellant.
Camp, Carmouche, Palmer, Carwile & Barsh, by Charles Carwile, Robert E. Turner, Joe J. Tritico, Lake Charles, for defendants-appellees.
Before TATE, FRUGE and HOOD, JJ.
FRUGÉ, Judge.
By this appeal we are called upon to decide but a single legal issue, namely, whether under our Negotiable Instruments Law a check which is originally payable to order is converted by a subsequent blank endorsement into bearer paper so that, despite a later special endorsement, the check remains bearer paper and may be successfully negotiated without further endorsement.
Briefly, the facts are as follows: One Samuel C. Mazilly executed a personal check payable to the order of Lee St. Mary and drawn on the Enterprise Boulevard Branch of the Calcasieu-Marine National Bank. The check was then endorsed in blank by Mr. St. Mary and given to the plaintiff, Leland H. Coltharp, Sr., as payment for some livestock purchased by St. Mary from Mr. Coltharp. The plaintiff endorsed the check "Pay to the order of City Savings Bank & Trust Company, DeRidder, Louisiana. * * *" (a special endorsement under R.S. 7:34) and deposited the check to his account in the City Savings Bank & Trust Company. The amount of the check, $1,017.74, was credited to the plaintiff's account and the check was forwarded by City Savings Bank through normal banking channels to the drawee bank, Calcasieu-Marine National Bank of Lake Charles, for collection. The account of the maker did not contain sufficient funds to cover the check, however, and the check was returned by the defendant bank to City Savings Bank & Trust Company, DeRidder, Louisiana, and there charged back against the account of the plaintiff, Mr. Coltharp. Normally the check itself and a slip indicating the charge-back would have been sent by mail to Mr. Coltharp. However, in this instance Mr. Coltharp never received the check in the mail. In some manner it fell *570 into the hands of an unknown person, who cashed it at the Enterprise Boulevard Branch of the defendant bank, despite the last endorsement on the check which read "Pay to the order of City Savings Bank & Trust Company, DeRidder, Louisiana, all prior endorsements guaranteed. Coltharp's Livestock Market Custodial Account, Shippers Proceeds, L. H. Coltharp, Sr." The teller who handled the transaction at the defendant bank cashed the check without requiring an endorsement by the person who presented it.
If, as the defendant bank contends, the check was bearer paper at the time it was presented for payment by the unknown person, the bank could cash the check without the possessor's endorsement and pay to the possessor the amount of the check without incurring liability. If, however, the check was order paper, it could only be negotiated by the written endorsement of the last endorsee, without which the bank pays to a mere possessor at its peril. See R.S. 7:34, 10 Am.Jur.2d, verbo "Banks", § 631.[1]
The trial judge decided as a matter of law that once the check was endorsed in blank by Lee St. Mary, it changed from order paper into bearer paper and that under R.S. 7:40 the check could be negotiated by delivery in spite of plaintiff's special endorsement to the order of City Savings Bank & Trust Company.
R.S. 7:40 provides:
"Where an instrument, payable to bearer, is indorsed specially, it may nevertheless be further negotiated by delivery; but the person indorsing specially is liable as indorser to only such holder as make the title through his indorsement."
However, under R.S. 7:9(5), an instrument is payable to bearer "when the only or last endorsement is an endorsement in blank," and under R.S. 7:34 the endorsement of a special endorsee is necessary to the further negotiation of the instrument.
No problems arise from the interaction of these three provisions of the Negotiable Instruments Law if the instrument as originally issued is bearer paper. In that instance, Section 40 clearly controls and, despite subsequent special endorsements, the instrument retains its bearer character. However, with regard to an instrument payable to order on its face but which becomes payable to bearer by virtue of a blank endorsement, the situation is otherwise and the conflict between Section 40 and Sections 9(5) and 34 is obvious.
Professor Britton in his Handbook of the Law of Bills and Notes points out the conflict and discusses its solution. We take the liberty of quoting at length from his text:
"No one would expect a bearer bond or a five dollar bill to be controlled by special indorsements. While less obvious, a note, bill, or check payable to bearer on its face should not be controlled by special indorsements. Nor were any of these bearer instruments so controlled at common law, nor are they controlled by the N.I.L. for section 40 codifies the common law rule. But as regards an instrument payable to order on its face which becomes payable to bearer by virtue of a blank indorsement, the commercial understanding is that the last indorsement is controlling. The rule that a special indorsement does not control a prior indorsement in blank was changed by N.I.L. §§ 34 and 9(5). Section 34 provides: `A special indorsement specifies *571 the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument.' Section 9(5) provides: `The instrument is payable to bearer when the only or last indorsement is in blank.' Thus in express terms Section 9(5) provides that when the last indorsement is in blank, the blank indorsement controls. If the last indorsement is special, Section 34 applies and directs that further negotiation may be made only by the indorsement of the special indorsee. Also, the clear implication from Section 9(5) is that the blank indorsement does not control unless it is the last one, i. e., if the last indorsement is special, it controls irrespective of the kinds of indorsements which preceded it.
"It has sometimes been argued that Section 40 re-enacts the rule of Smith v. Clarke, that an order instrument once indorsed in blank, its method of negotiation cannot be controlled by subsequent special indorsements. But if the expression `payable to bearer' as used in Section 40 were interpreted to include instruments which were payable to order on their face and became payable to bearer by virtue of blank indorsements, as well as instruments which were payable to bearer on their face, the result would be that Section 40 would nullify Section 34 and the implication from Section 9(5). A rule of construction forbids such interpretation. Where two sections of the same or different statutes overlap, and one construction obliterates one section and another construction permits each section to operate over a portion of the field, that construction should be adopted which enables each section to have some operative effect. As applied to the problem under discussion, this means that Sections 34 and 9(5) have reference to instruments payable to order on their face and Section 40 applies only to instruments payable to bearer on their face. Surprising as it may seem, the problem has not been raised in the cases under the N.I.L." (pp. 148-149)
Counsel for the bank argues, however, that the cases of National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App. 2d Cir. 1967) and Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761 (La.App. 1st Cir. 1964) are in point and establish a Louisiana rule contrary to that suggested by Professor Britton and other authorities.[2]
A reading of National Acceptance Company of America v. Wallace discloses that the note involved in that case was originally payable to bearer and, quite correctly, it was held that the "once bearer, always bearer" rule of R.S. 7:40 controlled.
In the Polk Chevrolet case, the note in question was made payable to the order of "Myself" and was endorsed by the makers in blank. The note was given to Polk Chevrolet with a chattel mortgage as security for the balance due on an automobile purchased by the defendant. The plaintiff subsequently transferred the note to General Motors Acceptance Corporation by special endorsement. When the makers failed to pay the note timely, GMAC, without endorsement, retransferred the note to the plaintiff for the purposes of collection. The defendant objected to the plaintiff's suing on the note, claiming that GMAC's special endorsement was necessary to retransfer title to the note and the indebtedness represented thereby to the plaintiff. The court in answering this contention did remark that, in its opinion, the note under R.S. 7:40 was negotiable by mere delivery and that GMAC's endorsement was unnecessary. In our opinion, however, the real basis for the court's holding was that as a re-acquirer under R.S. 7:121, the plaintiff was entitled to strike out under *572 R.S. 7:48 its own endorsement as unnecessary to the plaintiff's title.[3]
In this connection the court noted:
"It is significant that the record contains a notarial act by the Credit Manager of GMAC evidencing the re-transfer and assignment of the note and the indebtedness represented thereby to plaintiff. Under such circumstances plaintiff was entitled to strike its own endorsement which was not necessary to plaintiff's title."

Thus, unlike the instant case, the court in the Polk Chevrolet case was not squarely faced with the issue of whether order paper can be irrevocably converted to bearer paper by the simple device of placing a blank endorsement on the back of the instrument. We therefore regard their comments on the application of R.S. 7:40 to the note there involved as dicta and not controlling in the case at bar.
We note with interest that the rule urged upon us by the defendant bank as representing the proper construction of our Negotiable Instruments Law has been abrogated by every other jurisdiction in this nation with the adoption of Sec. 3-204 of the Uniform Commercial Code. As evidenced by the facts in the instant case, such a construction would place the risk of loss inherent in the transportation of negotiable instruments through commercial channels on the special endorser, the party least able to protect against those risks, while simultaneously relieving of liability the party who, under today's commercial practices, is the only party with an opportunity to avoid the loss by the simple expedient of requiring a further endorsement by the person presenting a specially endorsed instrument for payment. Indeed, there is positive testimony in the record before us that indicates that regardless of the original character of the instrument (whether order or bearer), the bank's policy is to insist upon an endorsement by persons presenting bills and notes for payment.
We therefore are of the opinion that the internal consistency of our Negotiable Instruments Act requires, and the better reasoning and greater weight of authority supports the proposition that Section 40 of the N.I.L. (R.S. 7:40) has no application to an instrument originally payable to order and subsequently converted to bearer paper by a blank endorsement. We feel that in such a situation the endorsement of the special endorsee is necessary for the payment or further negotiation of such an instrument unless dispensed with by a provision of the N.I.L. other than R.S. 7:40. Such being the case, it is our view that the defendant bank, having improperly paid the amount of the check to parties unknown, is obliged to repair the damage resulting therefrom and indemnify the plaintiff for the loss which he suffered through the defendant's inadvertence or want of care as established by the record before us.
For the foregoing reasons, therefore, we hereby reverse the judgment of the lower court and render judgment in favor of the plaintiff and against the defendant, Calcasieu-Marine National Bank of Lake Charles, in the amount of One Thousand Seventeen and 74/100 ($1,017.74) Dollars, together with legal interest thereon from date of judicial demand until paid. The costs of all proceedings are to be borne by the defendant.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] Furthermore, under R.S. 7:88, payment in due course of a negotiable instrument must be made "to the holder thereof" in good faith and without notice that his title is defective. Under this statute the term "holder" means the person who is legally in possession of the instrument and does not include a person who, though in actual possession of the instrument, has no right to accept payment because the instrument is made payable to the order of another named person. Anderson v. William R. Moore Drygoods Company, 152 Miss. 312, 119 So. 914 (1929).
[2] See Brannan, Negotiable Instruments Law, 7th ed., 1948, p. 628; Note, 25 L.L.R. 912 (1965).
[3] See Note. 25 L.L.R. 912 (1965), criticising the court's indication that the rule of N.I.L. 40 was applicable to an instrument originally payable to order.