501 So.2d 1032 (1987)
Bobby G. SCOTT, et ux., Plaintiffs-Appellees,
v.
BANK OF COUSHATTA, Defendant-Appellant.
No. 18364-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
Rehearing Denied February 19, 1987.
Writ Granted April 20, 1987.
*1033 William R. Jones, Coushatta, for plaintiffs-appellees.
Bethard & Davis by James G. Bethard, Coushatta, for defendant-appellant.
Before HALL, C.J., and SEXTON and LINDSAY, JJ.
HALL, Chief Judge.
The Bank of Coushatta appeals a judgment of the trial court ordering cancellation of a mortgage and the payment of damages to Bobby G. and Sarah Scott and the dismissal of its reconventional and third party demands against the Scotts and their son Tony G. Scott. For the reasons set forth herein, we affirm in part, reverse in part, and render.

FACTS
On August 4, 1980, Sarah Scott arranged for a loan of $1,716.75 from the Bank of Coushatta in order to make a down payment on a new automobile for her son Tony Scott. This debt was evidenced by a note in the amount of $1,716.75 bearing the signature of Tony's father, Bobby G. Scott, signed by his wife Sarah with his permission. (Exhibit P-3). This debt was secured by a pledge of a collateral mortgage note dated November 18, 1976 in the amount of $7,000.00 (Exhibit P-7) which was secured by a collateral mortgage on a house and lot owned by Bobby G. Scott in Red River Parish. (Exhibit P-4). The entire note was due on August 4, 1981 and provided for an annual percentage rate of 14.45%. To finance the remainder of the purchase price of the vehicle, Tony executed a chattel mortgage note in the amount of $10,494.96 with an annual percentage rate of 14.45%. (Exhibit P-9). This note was also executed on August 4, 1980. P-9 was signed by Tony for himself and by Sarah for Bobby. Both P-3 and P-9 were negotiated with Mr. G.E. Tisdale, President of the Bank of Coushatta. Sarah was an employee of the bank at this time.
In August, 1981, Tony desired to purchase a truck. This time, his parents refused to provide him with any financial assistance and requested that he pay off P-3 representing the down payment on his first vehicle. On August 18, 1981, Tony met with Mr. Tisdale and arranged for the financing of the truck. On this date, a note in the amount of $1,983.03 (the *1034 amount due on P-3, less $90.00, plus a finance charge of $316.62 and a credit life insurance premium of $39.66) bearing the signatures of Tony G. Scott and Bobby G. Scott was signed. (Exhibit P-8). Tony admitted at trial that he signed both his name and his father's name to P-8 and that he was not authorized to sign his father's name. This note was due on August 18, 1982 and provided for an annual percentage rate of 19%. This note listed the same collateral listed on P-3. On the same day, Tony executed another chattel mortgage note in the amount of $14,653.44 with an annual percentage rate of 19% to cover the balance of the purchase price of the truck. Only Tony's signature appeared on this note. At the time Tony made these notes, Sarah was no longer employed by the bank.
On August 19, 1981, P-3 was marked "paid" and mailed to Bobby and Sarah. In August, 1982, the Scotts received notice from the bank that they had a note due. The Scotts went to the bank and talked with Mr. Tisdale at which time they were made aware of Bobby's purported signature on P-8. Mr. Tisdale was advised that Bobby Scott had not signed the note. Despite efforts on behalf of the Scotts, the bank refused to cancel the collateral mortgage. In September, 1982, Tony filed a petition for bankruptcy. The debt evidenced by P-8 was discharged by order of the bankruptcy court on December 6, 1982.
On April 1, 1985, the Scotts filed this action against the bank to compel the cancellation of the mortgage on the Red River Parish property and to recover damages for the bank's failure to cancel the mortgage. In response to the Scott's suit, the bank answered asserting that P-8 was secured by the collateral mortgage note dated November 18, 1976 and reconvened against the Scotts for judgment on P-8 with interest and attorney's fees and recognition of its mortgage. By supplemental and amended reconventional demand, the bank asserted that if Tony signed Bobby's name without authority to do so, P-3 was erroneously marked "paid" or, alternatively, that Bobby had confirmed and acknowledged his signature on P-8. The bank also filed a third party demand against Tony asserting that if Tony signed Bobby's name without authority to do so, Tony's actions constituted fraud which would preclude his discharge in bankruptcy on P-8 and make him liable to the bank for any damages the bank was held to owe the Scotts.
The trial judge ruled that Tony had no authority, either apparent or otherwise, to sign Bobby's name to P-8; thus Bobby was not liable on P-8. Furthermore, he held that P-8 paid off P-3, and neither Bobby nor Sarah had any further obligation on P-3. The trial judge ordered the bank to cancel the collateral mortgage and to pay the Scotts $1,000.00 in damages and $1,000.00 in attorney's fees. The trial judge dismissed the bank's claims against Tony finding that they had been "adequately resolved" in the bankruptcy proceedings.
The bank appealed the judgment of the trial court asserting (1) that Tony is liable on P-8, (2) that Bobby is liable on P-3, and (3) that damages were erroneously awarded. Bobby and Sarah Scott answered the bank's appeal requesting that damages be increased to $15,000.00 and attorney's fees in the amount of not less than $5,000.00 be awarded.

TONY'S LIABILITY
The bank argues that the trial court erred in dismissing its claim against Tony as "adequately resolved" in the bankruptcy court, because its claim of fraud, if proven, would preclude Tony's discharge on P-8. 11 U.S.C. § 523(a)(2)(A). Since the 1970 amendments to the Bankruptcy Act, creditors must apply to the bankruptcy court to adjudicate dischargeability of debts for money obtained by fraud and the bankruptcy court has exclusive jurisdiction to determine such dischargeability. 11 U.S.C. § 523(c). See Brown v. Felsen, 442 U.S. 127, 130-31, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767, 770 (1979); 3 Collier on Bankruptcy, ¶ 523.11 (15th ed. 1986). The trial court was without jurisdiction to hear this claim and properly dismissed it.

BOBBY'S LIABILITY
The bank next argues that the trial court erred in dismissing its claim against *1035 Bobby because Tony's unauthorized signing of Bobby's name to P-8 caused the bank to erroneously mark P-3 "paid." Therefore, Bobby is still liable on P-3. The issue presented by this argument is whether Bobby's indebtedness on P-3 was extinguished, thus, relieving him from liability on the note.
At trial, Tony testified that on August 18, 1981, he went to the bank by himself and told Mr. Tisdale that he wanted to buy a truck on his own, but he had to pay off P-3. He testified that Mr. Tisdale filled out the papers and checked the blanks where he should sign, but that there was no discussion of a co-signer for the note. According to Tony, Mr. Tisdale asked him to sign his father's name to P-8 because the original note P-3 was in his father's name. Tony claimed that he was not aware that he had signed his father's name to a promissory note, but rather he thought it was to pay-off the original note which was in his father's name. Tony testified that there was no discussion of interest, insurance, or security for the note at this time. He also testified that he did not remember seeing anything listed under the collateral section of the note. Although he claimed that he signed the note in front of Mr. Tisdale, he was unsure of whether Mr. Tisdale's secretary, Claudette Thomas, was actually present at that particular moment because she was in and out of the office during the entire transaction. Tony emphatically stated that he did not take the note out of the bank.
Mr. Tisdale testified that he did not remember the details surrounding the signing of P-8. However, he testified that he did not ask Tony to sign his father's name and would not have done so. He mentioned two possibilities of when Tony might have signed his father's name to the note, either after taking the note out of the bank for that purpose or at a teller's window where the note might have been left awaiting Bobby's signature. Mr. Tisdale testified that P-8 was a "rework" note, meaning that it was negotiated to pay off another note, namely P-3. According to Mr. Tisdale, once a rework was completed, the old note was stamped "paid." Specifically, he stated that P-3 was marked "paid" because P-8 was thought to be a secured note signed by Bobby Scott.
Claudette Thomas testified that she could not remember any specific details concerning the signing of P-8. Although she could not remember Mr. Tisdale asking Tony to sign Bobby's name, that would have been an unusual procedure which she probably would remember had it occurred. She also testified that it was not a common practice at the bank to allow notes to be taken outside of the bank to have someone else sign them. Furthermore, she stated that she was not normally a witness to signatures on loans.
While the evidence clearly establishes that Tony signed Bobby Scott's name to the renewal note, P-8, the testimony of Tony alone is insufficient to establish that the bank officials were aware of that fact at the time the transaction was made. More probably than not, as testified by Mr. Tisdale, he was under the impression that the bank had a new secured note signed by Bobby Scott as a rework or renewal of the original note.
An indebtedness may be extinguished by, among other things, performance, novation, and remission. LSA-C.C. Arts. 1854, 1879, 1888.[1] Extinguishment of a debt is an affirmative defense, and the party asserting such a defense bears the burden of proof. Beasley v. Martin, 253 So.2d 801 (La.App. 2d Cir.1971).
Although Mr. Tisdale testified that P-8 was a "rework" note intended to pay-off P-3, the transaction, when viewed as a whole, indicates that P-8 was actually a renewal of the debt evidenced by P-3. Under such circumstances, P-3 was never *1036 paid and there was no performance of the obligation owed. Furthermore, the evidence does not support a finding that the bank intended to forgive or release Bobby from the debt evidenced by P-3; thus, there was no remission of this debt.
Novation is the extinguishment of an existing obligation by the substitution of a new one. LSA-C.C. Art. 1879. The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed. LSA-C.C. Art. 1880. LaNasa v. Bancroft Investment Corp., 306 So.2d 831 (La.App. 4th Cir.1975); Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761 (La.App. 1st Cir.1964).
Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation. LSA-C.C. Art. 1881. Novation also takes place when a new debtor is substituted for a prior debtor who is discharged by the creditor. LSA-C.C. Art. 1882.
Modification of an obligation does not effect a novation unless the intention of the parties to novate the obligation is clear and explicit. LSA-C.C. Art. 1881. Polk Chevrolet, Inc. v. Vicaro, supra.
The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself. Antoine v. Elder Realty Company, 255 So.2d 625 (La.App. 3d Cir. 1971); Midlo & Lehmann v. Katz, 195 So.2d 383 (La.App. 4th Cir.1967); Sterlington Bank v. Terzia Lumber & Hardware, Inc., 146 So.2d 233 (La.App. 2d Cir.1962).
Generally, the execution of a new note in renewal of an old one does not novate the original debt or destroy the privilege securing the same. Davis v. Welch, 128 La. 785, 55 So. 372 (1911); Farmers' National Bank of Lebanon, Ky. v. Belle Alliance Co., 142 La. 538, 77 So. 144 (1917); Bank of Coushatta v. Coats, 170 La. 163, 127 So. 587 (1930); Reconstruction Finance Corporation v. Thomson, 186 La. 1, 171 So. 553 (1936); Union Bldg. Corporation v. Burmeister, 186 La. 1027, 173 So. 752 (1937); Polk Chevrolet Inc. v. Vicaro, supra. In White Co. v. Hammond Stage Lines, 180 La. 962, 158 So. 353, 356 (1934), the Supreme Court stated:
... Although novation does not take place as a necessary consequence of a creditor's taking a new note in substitution of one which he returns to the debtor, novation does take place in such case if the circumstances surrounding the transaction show, or if the character of the transaction itself shows, that the parties intended to extinguish the existing debt, and to substitute a new one in its place....
The circumstances surrounding the execution of P-8 show that the bank intended P-8 to be a renewal of P-3. The only evidence of an intent by the bank to extinguish P-3 is that P-3 was marked "paid" and returned to the Scotts. However, it was the usual and customary practice of the bank to mark a note "paid" and to return it to the maker upon the signing of a new renewal note evidencing the original indebtedness, without any intent to cancel the original indebtedness. A substantial part of the original performance, namely the payment of P-3, is still owed. Thus, there was no substitution of a new debt and consequently, no novation. Furthermore, the requirement of Bobby's signature and carryover of the collateral on P-8 indicate that the bank had no intent to release Bobby from his obligation on P-3 by substituting Tony as the new debtor. Therefore, a novation by substitution of a new debtor cannot be found.
Clearly, Bobby has no liability on P-8 because he did not sign nor authorize his signature on that note. LSA-R.S. 10:3-404. However, because the debt evidenced by P-3 was never extinguished, Bobby is still liable on that note. One fact that is unimpugnable in this case is that the bank *1037 loaned Bobby Scott $1,716.75 and that money has never been repaid to the bank.

DAMAGES
Due to Bobby's liability on P-3, the bank acted properly in not cancelling the mortgage as requested by the Scotts. Therefore, the damages granted to the Scotts were improperly awarded. It follows that the Scotts are not entitled to the increase in damages and attorney's fees for which they prayed.

DECREE
The judgment of the trial court dismissing Bank of Coushatta's claims against Tony G. Scott is affirmed, the judgment of the trial court ordering Bank of Coushatta to cancel the collateral mortgage and to pay the Scotts $2,000.00 in damages is reversed, and judgment is rendered rejecting the demands of Bobby G. Scott and Sarah Scott against Bank of Coushatta. Judgment is rendered in favor of the Bank of Coushatta and against Bobby G. Scott in the sum of $1,716.75, with 14.45% interest thereon from August 4, 1980 until paid, together with 25% attorney's fees. Judgment is also rendered recognizing and ordering enforced to the extent of the amount of the judgment that certain mortgage executed by Bobby G. Scott in the amount of $7,000.00 dated November 18, 1976 affecting the following described property, to wit:
A piece or parcel of land situated in NE ¼ of SW ¼ of Section 21, Township 12 North, Range 8 West, Red River Parish, Louisiana, together with all buildings and improvements thereon, and more particularly described as follows:
Start at the Northwest corner of NE ¼ of SW ¼ of 21-12-8, thence run South 360 feet for an actual point of beginning for the property herein mortgaged; thence continue South a distance of 240 feet, thence run East 508.2 feet; thence North 240 feet; thence West 508.2 feet to the point of beginning, and being the South 240 feet of tract of land received by Mrs. Michael Elizabeth Wren Bamburg in Act of Partition dated April 11, 1953, of record in Conveyance Book 95, page 392, records of Red River Parish, Louisiana, and ratified by agreement and partition dated July 15, 1960, of record in Conveyance Book 108, page 237, records of Red River Parish, Louisiana, to which last agreement and act of partition a plat of survey was made by W.L. Mangham, Jr., R.S., on February 21, 1959.
All costs of these proceedings are assessed to Bobby G. Scott and Sarah Scott.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] It should be noted that the facts of this case arose before the January 1, 1985 effective date of Act No. 331 of 1984 which revised the Louisiana Civil Code articles on obligations. Although not directly applicable to this case, the new Civil Code articles cited in this opinion do not change the law and serve to explain the law as it existed prior to the revision.