612 So.2d 759 (1992)
FIRST NATIONAL BANK OF ABBEVILLE, Plaintiff-Appellee,
v.
Donald GREENE, et al, Defendants-Appellants.
No. 91-1104.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1992.
Rehearing Denied March 4, 1993.
*760 Roy Lilly Jr, Baton Rouge, for defendants-appellants.
Calvin Woodruff, Abbeville, for plaintiff-appellee.
Before STOKER, YELVERTON and COOKS, JJ.
STOKER, Judge.
This is an appeal from a judgment recognizing certain in rem collateral mortgages on defendants' property which secure two collateral mortgage notes. The main issues in this case are whether there was a proper pledge of the collateral mortgage notes to secure a hand note and whether the hand note was novated without a repledging of the collateral mortgage notes. We affirm.

FACTS
In 1984, Hardy Tractor of Gueydon, Inc. sought financing for the construction of a new building. Ruby Linscomb Hair LeBlanc and Delores Hair Dietz were relatives of the company's president in 1984, Keith Hair. LeBlanc and Dietz owned the tract of land which Hardy Tractor leased for its business operations. LeBlanc and Dietz agreed to put in rem collateral mortgages on their property in order to secure two loans to Hardy Tractor from First National Bank of Abbeville. Dietz, who lived out of state, executed two powers of attorney in favor of LeBlanc for the sole purpose of confecting the collateral mortgages to secure the two loans to Hardy Tractor (for $100,000 and, later, an additional $20,000).
The collateral mortgage for $100,000 was executed on January 11, 1984 and signed by Keith Hair on behalf of Hardy Tractor and by Ruby Linscomb (now LeBlanc) on behalf of herself and Dietz. However, the collateral mortgage note and the collateral pledge agreement were signed only by Keith Hair for Hardy Tractor. The pledge agreement states that the collateral is pledged by the borrower (Hardy Tractor).
On June 1, 1984, a collateral mortgage for $20,000 was executed and signed by Keith Hair for Hardy Tractor and by Ruby Linscomb for herself and Dietz. Again, the collateral mortgage note and the collateral pledge agreement were signed only by Keith Hair for Hardy Tractor. The pledge agreement states that the collateral is pledged by the borrower (Hardy Tractor).
The debtors delivered both of these notes to the First National Bank of Abbeville (Bank), and these two collateral mortgage notes have remained in the Bank's possession at all times pertinent to the lawsuit.
Hardy Tractor executed five hand notes in 1984 up to the $120,000 total limit, against which the collateral mortgage notes were pledged as security. The hand notes each matured in sixty or ninety days. Subsequently, the hand notes were consolidated and renewed in one note for $120,000, with eleven monthly payments plus a *761 final balloon payment due in August 1985. This note stated that it was also secured by the original pledges. It was signed by Keith Hair and Donald Greene for Hardy Tractor. Donald Greene was a director of Hardy Tractor.
In September 1985, the hand note was again renewed for the balance due of $113,463.96, payable in eleven monthly installments plus a final balloon note due in September 1986. This note was signed for Hardy Tractor by Wayne Zaunbrecker, Donald Greene and Burton Hardy, all directors of Hardy Tractor. A new collateral pledge agreement was drawn up, pledging the two 1984 collateral mortgage notes to secure the new hand note. The 1985 pledge agreement states that it does not have the effect of releasing the original 1984 pledge agreements. The 1985 pledge agreement is signed by Wayne Zaunbrecker, on behalf of himself, Hardy Tractor and three other principals in Hardy Tractor, and by Donald Greene and Burton Hardy. Also, Wayne Zaunbrecker, Donald Greene and Burton Hardy signed a continuing guaranty for the Hardy Tractor note on September 30, 1985.
Sometime in 1986, Hardy Tractor of Gueydon, Inc. became defunct. Donald Greene, Wayne Zaunbrecker and Burton Hardy agreed to divide and personally assume the corporate debts. Donald Greene assumed the debt owed to First National Bank of Abbeville.
In February 1987, First National Bank accepted a new hand note signed by Donald Greene for $108,339.55, for which it renewed the loan for the balance due on the 1985 Hardy Tractor hand note. The new note was payable in eleven monthly installments with a balloon payment due in February 1988. The note stated, "Collateral securing other loans with us may also secure this loan." Also, on February 17, 1987, Burton Hardy and Wayne Zaunbrecker signed a continuing guaranty on the note given by Donald Greene.
Finally, in July 1988, the Bank made the last renewal of the loan on the basis of a note given by Donald Greene for $104,920.92, payable on demand or on January 25, 1989, plus one quarterly interest payment on October 25, 1988. The note states that it is secured by the two 1984 collateral mortgage notes. It is signed by Donald Greene.
Donald Greene became delinquent in payment of the 1988 hand note. The Bank placed him in default and sent a notice of the default to LeBlanc and Dietz, as required by the collateral mortgage. On June 22, 1989, the Bank filed this suit against Donald Greene, Delores Hair (Dietz) and Ruby Linscomb (LeBlanc) for the balance due on the 1988 hand note plus accrued interest ($112,301.83), plus interest until paid, attorney fees and costs, and for recognition of the two 1984 collateral mortgages.

TRIAL COURT ACTION
Dietz and LeBlanc filed an exception of no cause of action alleging that the Bank's petition sets forth only conclusions of law as to its secured interests in the property, rather than facts tending to show a pledge of the collateral mortgage notes to secure the promissory notes sued on by the Bank. They argued that the Bank's allegations that the hand notes are "secured" by the collateral mortgage notes are mere legal conclusions. The trial judge denied the exception. Dietz and LeBlanc then answered with a general denial.
At trial, the Bank introduced evidence of the debt, the in rem collateral mortgages, and the pledges. The loan officer who handled the loan, Steve Griffin, testified that Donald Greene personally took over Hardy Tractor's debt after Hardy Tractor went out of business. Donald Greene testified that neither he nor Hardy Tractor ever released the collateral mortgages on the property which secured the debt.
Dietz, LeBlanc, and their attorney failed to appear at trial, due to having overlooked the notice of the trial date which was sent to them.
The trial judge held in favor of the Bank, granting a judgment against Greene for $113,759.29 and recognizing the collateral *762 mortgages and the in rem collateral mortgage notes pledged to the Bank.
Dietz and LeBlanc filed a motion for new trial which was denied.

ASSIGNMENTS OF ERROR
On appeal, Dietz and LeBlanc make the following assignments of error:
First, appellants argue that the Bank's pleadings failed to allege facts showing the hand note was secured by collateral mortgages on their property. Therefore, the evidence of the pledge agreements and collateral mortgage notes was improperly admitted and thus enlarged the pleadings.
Second, they contend that defendants failed to establish a prima facie case by competent evidence.
Third, appellants argue that the hand note issued to Hardy Tractor was extinguished by novation. Therefore, the new hand note to Donald Greene was not secured by the pledge securing the Hardy Tractor note.
Finally, appellants claim the Bank failed to introduce evidence of a valid pledge of the collateral mortgage notes to secure the hand note issued to Donald Greene.

ASSIGNMENT 1
Appellants contend on appeal that the trial judge erred in allowing the introduction of evidence concerning the pledges of the collateral mortgage notes since the Bank's petition failed to allege the existence of any pledges. On that basis, appellants argue that they are entitled to a new trial. We disagree.
The Bank's pleadings allege the existence of the collateral mortgage notes which "secure" the hand notes and the existence of the collateral mortgages which secure the collateral mortgage notes. We find that these allegations of fact were sufficient to notify appellants of the Bank's intent to foreclose on their property and of the means by which they would do so.
Moreover, no objection was made to the introduction of the evidence at trial. Even if the allegations of the petition were inadequate or merely conclusory, we would find that the pleadings had been enlarged by the introduction of the evidence of the pledges at trial, pursuant to LSA-C.C.P. art. 1154.

ASSIGNMENTS 2, 3, & 4
Next, appellants argue that the trial judge erred in granting a judgment against them since the Bank failed to introduce competent evidence to establish a prima facie case against the appellants in the following respects. Appellants argue that the hand notes which were executed by Hardy Tractor were paid or novated when the Bank accepted Donald Greene as the debtor in substitution for Hardy Tractor. Alternatively, appellants contend the collateral mortgage notes were never pledged to secure the hand note executed by Donald Greene. We disagree.

Novation
Appellants argue that the hand notes executed by Hardy Tractor were novated, thereby extinguishing the ancillary obligation of pledge with the discharge of the principal obligation. This argument is founded on the contention that the collateral mortgage notes were only pledged as security for the original $120,000 loan to Hardy Tractor.
Appellants further argue that the hand notes executed by Hardy Tractor were novated either by the creation of a new debt and coincidental payment of the original debt, through the 1987 hand note executed by Donald Greene or by the substitution of Donald Greene as the debtor on the hand note after Hardy Tractor had become defunct.
The principles of novation are well settled and understood. The Louisiana Supreme Court has set forth an excellent discussion of these principles in Scott v. Bank of Coushatta, 512 So.2d 356 (La. 1987). As provided in LSA-C.C. art. 1882, novation takes place when a new obligor is substituted for a prior obligor who is discharged by the obligee. The facts and circumstances of a given case must clearly evidence an intent by the creditor to release *763 the prior debtor. See the 1984 Revision Comments under LSA-C.C. art. 1882 and the discussion in Scott.
In the case before us, we find no evidence that the parties to the loan contract intended to extinguish existing debt and substitute a new one in its place. The Bank permitted one of the guarantors of Hardy Tractor's debt to assume responsibility for its continued payment. No new obligation was created by accepting payment from one of Hardy Tractor's guarantors. The Bank merely renewed Hardy Tractor's loan as it had done annually since the loan was originated. It is not reasonable to believe the Bank intended to substitute an unsecured debt for one secured by collateral mortgage notes and personal guarantees. Therefore, the debt was not novated by payment.
Moreover, we do not find that the Bank intended to release Hardy Tractor when it accepted payment by Donald Greene and renewed the loan in his name. Such an intention was never discussed by the parties to the loan, nor was it expressed by the Bank. Since Donald Greene was one of the guarantors of the Hardy Tractor loan, we cannot justifiably assume that the Bank intended to release Hardy Tractor from liability when it accepted payments by Donald Greene.
Therefore, we hold that the hand notes executed by Hardy Tractor were not novated.

Pledge
In the alternative, appellants contend that there was never a pledge of the collateral mortgage notes to secure the 1988 hand note sued on by the Bank. Appellants argue that the collateral mortgage notes were not repledged by the owner of the notes, Hardy Tractor, after 1984.
First, we must point out that Hardy Tractor was not the owner of the collateral mortgage notes. Instead, Dietz and LeBlanc were the owners because they were the debtors (mortgagors) on the collateral mortgage notes. The debtor remains the proprietor of the pledge which is in the hands of the creditor only as a deposit to secure the privilege on it. LSA-C.C. art. 3166; Texas Bank of Beaumont v. Bozorg, 457 So.2d 667 (La.1984). The mortgagor is the pledgor; he pledges the "ne varietur" note (collateral mortgage note) and the act of mortgage itself to the creditor to secure the debt which is evidenced by the hand note. M. Nathan, Jr. and H.G. Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 at 502 (1973). A person may give a pledge for the debt of another. LSA-C.C. art. 3141; R. Slovenko, Of Pledge, 33 Tul. L.Rev. 59 at 64 (1958).
In Texas Bank of Beaumont v. Bozorg, supra at 671, the supreme court discussed the nature, use and function of a collateral mortgage in Louisiana. The principles and practices outlined by the supreme court are well understood and need no elucidation here. What transpired in this case was in conformity with those principles and practices.
In the case before us, the original pledge agreement was signed by Hardy Tractor. Obviously, Hardy Tractor was not the owner of the pledged property (the collateral mortgage notes) and, therefore, was not the proper pledger. See LSA-C.C. art. 3142. However, LSA-C.C. art. 3145 and art. 3146 provide for the pledge of the property of another with the owner's consent:
Art. 3145. Pledge of property of another, necessity for consent of owner
One person may pledge the property of another, provided it be with the express or tacit consent of the owner.
Art. 3146. Implied consent of owner
But this tacit consent must be inferred from circumstances, so strong as to have [leave] no doubt of the owner's intention; as if he was present at the making of the contract,* or if he himself delivered to the creditor the thing pawned.
We find that Dietz and LeBlanc clearly consented to the pledge by Hardy Tractor of their collateral mortgage notes to secure Hardy Tractor's debt. Their intent and consent is evidenced by the purpose stated in the powers of attorney executed by Dietz and in the acts of mortgage signed by LeBlanc on behalf of herself and *764 Dietz. Therefore, the original pledge by Hardy Tractor of Dietz's and LeBlanc's collateral mortgage notes was proper.
We further find that there was no necessity to repledge the collateral mortgage notes each time the hand note was renewed. Generally, the execution of a new note in renewal of an old one does not novate the original debt or destroy the privilege securing the same. Scott v. Bank of Coushatta, 501 So.2d 1032 (La. App. 2d Cir.), reversed on other grounds, 512 So.2d 356 (La.1987), and cases cited therein. LSA-C.C. art. 3158 expressly addresses this situation in section C(1):
Art. 3158. Formalities and contents of pledge; requirements for pledge of promissory notes and other written obligations

* * * * * *
C.(1) Whenever a pledge of any instrument or item of the kind listed in this Article is made or has been made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledgor or any other person, to the pledgee, or its successor, then existing or thereafter arising, up to the limit of the pledge, such as may be included in a cross-collateralization clause, and the pledged instrument or item remains and has remained in the hands of the pledgee or its successor, the instrument or item may remain in pledge to the pledgee or its successor, or without withdrawal from the hands of the pledgee or its successor, be repledged to the pledgee or its successor to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledgor or any other person to the pledgee or its successor, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledgor thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them. (Emphasis added.)
When the hand note was renewed in Donald Greene's name, it was merely a renewal of Hardy Tractor's debt, since neither Donald Greene nor the Bank intended to extinguish the old debt and create a new one. Therefore, we find that the original pledge of the collateral mortgage notes remained effective each time the original debt of Hardy Tractor was renewed. For that reason, the evidence introduced of the original pledge constituted evidence of the pledge securing the hand note sued on by the Bank in these proceedings.

CONCLUSION
Therefore, we hold that the trial judge did not err in rendering a judgment in favor of the Bank, recognizing the collateral mortgage notes secured by the collateral mortgages on the property of Dietz and LeBlanc.

DISPOSITION
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants Ruby Hair Linscomb LeBlanc and Delores Hair Dietz.
AFFIRMED.